# 2004 DTA 82

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGION JUDICIAL DE SAN JUAN
PANEL III**

ASOCIACION DE CONDOMINES DEL CONDOMINIO DEL MAR
Demandantes-Apelados

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE LA FAMILIA;
ADMINISTRACION PARA EL SUSTENTO DE MENORES
Demandados-Apelantes

Núm. KLAN-02-00243

San Juan, Puerto Rico, a 23 de marzo de 2004

Panel integrado por su Presidente, el Juez Rafael Ortiz Carrión,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Estado Libre Asociado de Puerto Rico (E.L.A.), el Departamento de Recursos Naturales y Ambientales (DRNA) (apelantes) y el Departamento de Recreación y Deportes (DRD) ▮ acuden ante este Tribunal para que revisemos la sentencia sumaria que el 11 de diciembre de 2001 emitió el Tribunal de Primera Instancia, Sala Superior de San Juan, al adjudicar la moción de sentencia sumaria presentada por la Asociación de Condómines del referido inmueble (Asociación). En ésta, el referido foro: (1) determinó que el E.L.A. y el DRNA eran los titulares de la zona marítimo-terrestre localizada al Norte de la Laguna del Condado, colindante con el Sur del Condominio del Mar (Condominio), y del muro y paseo edificado en esa zona; (2) desestimó la demanda en cuanto al DRD y el Fideicomiso para el Desarrollo Operación y Conservación de los Parques Nacionales (Fideicomiso), y (3) la demanda contra coparte instada por el E.L.A. contra el Municipio de San Juan (Municipio).

En cuanto a los apelantes, el dictamen se limita a **concluir o a declarar** que el E.L.A. y el DRNA son los titulares de la zona marítimo-terrestre y de lo en ella edificado. Como veremos más adelante, no dispone totalmente de la reclamación formulada en la demanda que todavía subsiste, sino de una controversia dentro de ésta. ■

No obstante, apelada esa decisión y considerado el tiempo transcurrido hasta el presente en este litigio, hemos optado por ejercer nuestra discreción para seguir atendiendo el recurso como una apelación, pues ello no perjudica en forma alguna a las partes y, como tal, le concede a los apelados el derecho de presentar su alegato.

Transcurrido el plazo para oponerse, la Asociación no presentó alegato, solamente el Municipio, por lo que examinados los escritos sometidos y los documentos obrantes en autos, procedemos a adjudicar el recurso, no sin antes hacer una exposición del trasfondo fáctico pertinente.

## I

El 8 de abril de 1981, la Asociación presentó una demanda sobre daños y perjuicios contra el E.L.A., el Municipio, John Doe, Richard Doe, y sus compañías aseguradoras. Alegaron que éstos habían sido negligentes al construir o dar mantenimiento a un muro de contención que colinda por el Sur con el Condominio y que, por ello, el agua de la Laguna del Condado había levantando el paseo y provocado daños y perjuicios al Condominio que estimaban en $200,000.00. ■

El E.L.A. presentó una moción de sentencia sumaria mediante la cual alegó que por tratarse de un sector municipal, no tenía jurisdicción o control del área donde estaba ubicado el muro de contención. Apoyó su moción con una certificación del Secretario del Departamento de Transportación y Obras Públicas de Puerto Rico, en la cual, y en lo pertinente, se indicaba que el muro de contención se encontraba bajo la jurisdicción, control y mantenimiento de un sector municipal.

La Asociación se opuso a que se dictara sentencia sumariamente, porque existía controversia material en cuanto a la titularidad del predio donde estaba ubicado el muro de contención y el paseo objeto de la demanda y debido a que, de las constancias del Registro de la Propiedad, surgía que el Condominio colinda por el Sur con el muro de contención y la zona marítimo-terrestre. Presentó, además, sendas declaraciones juradas que apoyaban su alegación en torno a la titularidad del muro de contención.

El Municipio también se opuso a la moción presentada por el E.L.A. Alegó que la certificación presentada por éste nada aclaraba en cuanto a quién pertenecía el paseo y el muro mencionado, y planteó que procedía que se produjeran los documentos oficiales de los que se desprendía que era el Municipio quien tenía jurisdicción sobre el área en controversia. Sustentó su moción con la declaración jurada de la Jefa de Investigaciones Legales y de Títulos del Municipio, quien indicó que el paseo existente entre el Condominio y la Laguna no era propiedad ni estaba bajo el control del Municipio.

El 9 de noviembre de 1982, el tribunal apelado determinó que de los documentos presentados por las partes surgía una controversia en cuanto a la titularidad del muro de contención y el paseo que colinda con el Condominio, y por ello denegó la moción de Sentencia Sumaria presentada por el E.L.A. Esta decisión no fue revisada ante el Tribunal Supremo de Puerto Rico.

Notificada la resolución anterior, el E.L.A. y el Municipio presentaron sus respectivas contestaciones a la demanda y negaron todas y cada una de las alegaciones de la Asociación. Por su parte, el E.L.A. presentó, además, una demanda contra coparte en contra del Municipio alegando que los daños sufridos por la Asociación se debieron a la negligencia exclusiva o concurrente del Municipio, o a éste y otras partes no relacionadas con el E.L.A. El Municipio contestó y negó las alegaciones que en su contra formuló el E.L.A. ■

El 15 de marzo de 1990, la Asociación presentó una demanda enmendada para incluir como demandados a la Administración de Parques y Recreos Públicos (Administración de Parques), al DRD, a la Compañía de Fomento Recreativo (Fomento Recreativo), al Fideicomiso y al Secretario de Justicia.

Recibida la demanda, el Fideicomiso presentó una moción de desestimación mediante la cual alegó que en la demanda enmendada no se incluyó alegación alguna ni se solicitó remedio alguno en su contra. La Asociación se opuso a ésta. Alegó que el Fideicomiso debía entender que de acuerdo con el epígrafe de la demanda era un codemandado; que debido a ello la Asociación le imputaba responsabilidad y le exigía indemnización por los daños sufridos; que de un interrogatorio que le cursó a Juan Alberto Díaz Tavárez, Director Ejecutivo y Administrador del Fideicomiso, surgía que esta entidad tenía el control absoluto de la zona marítimo-terrestre donde se encuentra el muro de contención; ■ que las alegaciones del Fideicomiso carecían de validez y que las posiciones de las partes debían ventilarse en un juicio plenario.

Posteriormente, Fomento Recreativo presentó una moción de Sentencia Sumaria mediante la cual alegó que el muro no estaba bajo su jurisdicción; que no fue quien construyó el mismo y que nunca había tenido la obligación de darle mantenimiento. Aseveró, además, que era al Fideicomiso a quien le correspondía proveer el mantenimiento del muro porque, aunque por virtud de la Ley 59 de 29 de mayo de 1968, la Laguna del Condado y los terrenos que la circundan fueron declarados Parque estatal y puestos bajo la Administración de Parques y Recreos Públicos, (hoy el DRD), y que a partir del 23 de diciembre de 1988, el referido parque le fue transferido al Fideicomiso.

La Asociación se opuso a la moción presentada por Fomento Recreativo. Adujo que a pesar de la alusión a la Ley Núm. 59 de 29 de mayo de 1968 y a que mediante la Ley Núm. 126 de 13 de junio de 1980, se derogaron disposiciones en conflicto y se transfirieron las facultades del Administrador de Parques al DRD, del artículo 5 de la citada Ley Núm. 126 surgía que las funciones de administración, control, mantenimiento y conservación de todos los parques y cualquiera otros sitios de recreos públicos pertenecientes al gobierno estatal, tales como balnearios públicos, parque, merenderos centros vacacionales, zoológicos, así como cualquier facilidad destinada a actividades de recreación y deportivas, se transferían a Fomento Recreativo.

Oportunamente, el tribunal sentenciador denegó la moción de Sentencia Sumaria presentada por Fomento Recreativo. Esta decisión tampoco fue objeto de revisión ante el Tribunal Supremo de Puerto Rico.

Fomento Recreativo contestó, entonces, la demanda y negó la totalidad de las alegaciones.

Posteriormente, el Fideicomiso presentó otra moción de sentencia sumaria. Alegó que nunca había sido dueño del muro en controversia o que lo había poseído o tenido a su cargo. Fundamentó su moción en una certificación emitida por Celia Ivonne Vega Pabón, Asesora II del Fideicomiso, quien bajo juramento indicó que de sus récords y documentos se desprendía que el Fideicomiso nunca había sido dueño, poseedor o tenido a su cargo el cuidado o mantenimiento del muro de contención o del paseo construido en la colindancia Sur del Condominio.

Fomento Recreativo se opuso a la moción presentada por el Fideicomiso. Postuló que los terrenos colindantes a la Laguna del Condado pertenecían o estaban a cargo del Fideicomiso. Sustentó esa oposición con una declaración jurada de Rosa Yambó Santiago, Investigadora de Títulos de Fomento Recreativo, en la que, en síntesis, se limitó a concluir que de la investigación que realizó no se desprendió que existiera contrato alguno de cesión a Fomento Recreativo para administrar, mantener y conservar los terrenos circundantes a la Laguna del Condado ni el muro de contención.

El 7 de agosto de 1990, el tribunal de instancia denegó la moción del Fideicomiso; decisión que tampoco fue objeto de revisión judicial ante el Tribunal Supremo de Puerto Rico.

Con posterioridad, el Fideicomiso contestó la demanda. Negó que fuera el dueño del muro o que estuviera en posesión del mismo, aunque por disposición de la Ley Núm. 59 de 29 de mayo de 1968 estuviera en posesión de una zona marítimo-terrestre que colindara por el Sur con el Condominio.

El 1 de septiembre de 1992 y a solicitud de la Asociación, el tribunal de instancia emitió una sentencia parcial permitiendo que ésta desistiera con perjuicio de su acción contra el Municipio.

Varios años más tarde, el 1 de marzo de 1999, la Asociación presentó una moción de sentencia sumaria para que se decretara quién era el titular del muro de contención y del paseo en cuestión. A dicha moción se opuso el E.L.A., alegando que la Asociación no había presentado prueba que demostrara con certeza a quién le pertenecía la faja de terreno en controversia; quién construyó el muro en controversia; y que tipo de mitigación de daños había llevado a cabo ella. Argumentó, también, que de la prueba presentada por la Asociación se desprendía que la misma no había podido en 18 años establecer con certeza que tenía derecho a un remedio contra el demandado. El Fideicomiso, Fomento Recreativo y el Municipio también se opusieron a la moción de la Asociación.

El 8 de julio de 1999, el tribunal apelado determinó que existían hechos materiales en controversia y denegó la moción de la Asociación. La resolución que emitió a esos efectos tampoco fue objeto de revisión ante este Tribunal.

El 23 de julio de 1999, la Asociación informó que desistía de su acción en daños y perjuicios, con el fin de que solamente se dilucidara la titularidad de quién era el titular del área donde ubicaba las edificaciones objetos del pleito, a lo que accedió mediante sentencia parcial del 7 de octubre de 1999. Más tarde, en octubre de 1999, la Asociación solicitó que se le permitiera también desistir de su causa de acción contra Fomento Recreativo. El 6 de diciembre de 1999, el tribunal de instancia accedió a ello mediante Sentencia Parcial. ■

Así las cosas, el 2 de noviembre de 1999, la Asociación presentó otra moción de sentencia sumaria. Alegó esta vez que la investigación que realizó demostró que el muro de contención se había construido en la zona marítimo-terrestre perteneciente al E.L.A.; que la Laguna del Condado había sido puesta bajo la jurisdicción de la Administración de Parques y Recreos Públicos (en la actualidad, Fomento Recreativo), pero que a partir del 23 de diciembre de 1988 se constituyó el Fideicomiso y que mediante escritura pública se le transfirió a éste la propiedad de la Laguna del Condado; que clara e inequivocamente, el Fideicomiso era el titular de la faja de terreno donde están las edificaciones y que así ya lo había reconocido el Director Ejecutivo del referido Fideicomiso. ■

Como cuestión de derecho, planteó que el DRNA había sido designado para ejercer la vigilancia y conservación de las aguas territoriales, los terrenos sumergidos bajo ellas y la zona marítimo-terrestre y que, por consiguiente, al referido departamento le correspondía vigilar la zona que queda en la Laguna del Condado y que colinda con el condominio. Basado en lo anterior, planteó que no existía controversia en cuanto a que el área en cuestión le pertenecía al Fideicomiso y que la vigilancia de la zona marítimo-terrestre le correspondía al DRNA.

El Fideicomiso se opuso a la solicitud de sentencia sumaria. Alegó que de las propias alegaciones de la Asociación podía concluirse que era improcedente dictar sentencia sumariamente; que de la descripción registral surgía que la colindancia sur del Condominio era un paseo que sería construido, y que la Asociación admitió que el desarrollador tenía que construir un callejón o paseo de tres metros al margen de la Laguna del Condado. Postuló que el paseo o franja en cuestión forma parte de la descripción registral del mismo y pertenece al Condominio y no al Fideicomiso.

El 27 de enero de 2000 se celebró una vista sobre la Moción de Sentencia Sumaria presentada. En la misma y luego de una reunión, **tanto el E.L.A. como el DRNA aceptaron que el muro y el paseo objeto del pleito están en la zona marítimo-terrestre,** aunque plantearon que ello no significaba que aceptaban que tenían la obligación

de darle mantenimiento al muro en cuestión.

El 13 de febrero de 2001, el Fideicomiso presentó una moción de desestimación en la que alegó que habida cuenta de que en la vista del 27 de enero de 2000, el E.L.A. y el DRNA informaron que el muro y el paseo objeto de la demandada presentada por la Asociación formaban parte de la zona marítimo-terrestre y estaban, por ello, bajo la jurisdicción del DRNA, procedía la desestimación de la demanda presentada en su contra.

Diez meses después, el 11 de diciembre de 2001, el tribunal *a quo* emitió la sentencia de la cual se apela. En cuanto al E.L.A. y el DRNA, concluyó que eran los titulares de la zona marítimo-terrestre localizada al Norte de la Laguna del Condado, colindando por el Sur del Condominio y lo en ello edificado. Razonó que el DRNA había admitido que tenía bajo su jurisdicción y control la zona marítimo-terrestre donde se encuentran ubicados el muro de contención y el paseo que son objeto de controversia en el caso de autos y que de conformidad con el Artículo 287 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1131, *"la propiedad de un inmueble lleva inherente el derecho por accesión a todo lo que se le une o incorpora"*. Por otro lado, desestimó la demanda presentada contra el DRD y contra el Fideicomiso, así como la demanda contra co parte que el E.L.A presentó contra el Municipio.

Inconforme en su alegato ante este Tribunal, los apelantes señalan que el tribunal *a quo* erró al no acoger el planteamiento relacionado con la falta de parte indispensable; al resolver que el E.L.A. y el DRNA eran los titulares del muro y del paseo porque los mismos estaban ubicados en la zona marítimo-terrestre, y al no celebrar un vista en su fondo y proceder a emitir una sentencia basada en el expediente del caso. Además, al inicio de su alegato plantean que el tribunal de instancia no le notificó la sentencia, a su abogado, a la dirección correcta.

Por su importancia, consideramos en primer término los planteamientos que cuestionan nuestra jurisdicción: (1) la falta de notificación de la sentencia; y (2) la ausencia de parte indispensable.

## II
**Falta de notificación de la Sentencia.**

### A
En síntesis, los apelantes plantean que el tribunal de instancia no le notificó la sentencia a su abogado, a la dirección correcta. Señalan que aunque el 9 de enero de 2001 su representante legal, el Lcdo. Mario Carrillo, había presentado una moción para renunciar a esa representación legal y ésta no había sido aceptada, le notificaron la sentencia a una dirección que no era la de récord en el Departamento de Justicia, División de Litigios Generales. Veamos.

### B
La notificación de una sentencia *"es parte del Debido Proceso de Ley y por tanto la notificación al abogado que interviene en representación de persona interesada es indispensable en todas las etapas."* Berríos v. Comisión de Minería, 102 D.P.R. 228, 230 (1974); Medio Mundo, Inc. v. Rivera, **2001 J.T.S. 88**, 1388. La notificación *"sirve un propósito lógico y sabio en la administración de la justicia"*, Asoc. Vec. Altamesa v. Municipio de San Juan, 140 D.P.R. 24, 34 (1996). Esta *"brinda a las partes la oportunidad de advenir en conocimiento real de la determinación tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de advenir en conocimiento real de la determinación tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley."* Id.

La Regla 46.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que el tribunal tiene la obligación de notificar a las partes la sentencia que dicte, al disponer lo siguiente:

*"Será deber del Secretario notificar a la brevedad posible dentro de las normas que fije el Tribunal Supremo,*

*las sentencias que dicte el tribunal, archivando en autos copia de la sentencia y de la constancia de la notificación y registrando la sentencia." Medio Mundo, Inc. v. Rivera, supra.*

La Regla 65.3(a) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece cuándo y a quién le debe notificar de la sentencia:

*"(a) **Inmediatamente después de archivarse en autos copia de una orden o sentencia, el secretario notificará tal archivo a todas las partes que hubieren comparecido en el pleito en la forma preceptuada en la Regla 67**. El depósito de la notificación en el correo será aviso suficiente a todos los fines para los cuales se requiera por estas reglas una notificación del archivo de una orden o sentencia."* (Énfasis nuestro).

El inciso (c) de dicha regla permite que *"cualquier parte [pueda] darse por notificada de cualquier orden, resolución o sentencia firmando en el original del documento y haciendo constar la fecha en que se ha dado por notificado."* Regla 65.3 (c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.

No obstante y como se desprende de estas reglas, *"el Tribunal tiene la obligación de notificar las partes de la sentencia dictada. Notificar una sentencia a la dirección errónea de un abogado de una parte, equivale a ninguna notificación." Rodríguez Mora v. García Lloréns*, **98 J.T.S. 152**, 353-54. La Corrección de la notificación de la sentencia es determinante debido a que *"[l]os términos jurisdiccionales para utilizar los remedios postsentencia y para recurrir en alzada comienzan a transcurrir desde el archivo en autos de una copia de la notificación de la sentencia." Pueblo v. Hernández Maldonado*, 129 D.P.R. 472, 486 (1991); *Martínez Inc. v. Abijoe Realty Corp.*, **2000 J.T.S. 85,** 1124. Ello es crucial en esta etapa, *Pueblo v. Hernández Maldonado, supra*, en las págs. 486-87, y su falta provoca que la sentencia no surta efecto, *Id.* Resolver en contrario provocaría que una parte pudiera *"ser privada de su día en corte y como consecuencia, de su propiedad sin que haya mediado el debido procedimiento de ley." Pueblo v. Maya Pérez*, 99 D.P.R. 820, 823 (1971).

Finalmente, el que no se efectúe la notificación de la sentencia torna en prematura la intervención de este foro apelativo, *Rosario Bermúdez v. Hospital General Menonitas*, **2001 J.T.S. 126**, 83; *Medio Mundo, Inc. v. Rivera, supra*, en la pág. 1389.

## C

En la causa ante nos, es correcto que el tribunal de instancia no le notificó a los apelantes la sentencia que dictó el 11 de diciembre de 2001 a la dirección de su representante legal en el Departamento de Justicia. Sin embargo, lo hizo a la dirección de su abogado, el Lcdo. Carrillo, quien aunque había presentado una moción de reconsideración, no había sido aceptada en la fecha en que se notificó la sentencia.

En vista de ello, la sentencia fue notificada al abogado que todavía representaba a los apelantes, aunque no fue a su dirección en el Departamento de Justicia. El que la dirección utilizada no fue la que el abogado tenía cuando era empleado del Departamento de Justicia, no implica que el E.L.A. y el DRNA no fueron notificados, si su abogado si lo fue, antes de que se le aceptara su renuncia.

Además, el E.L.A. y el DRNA no han alegado ni demostrado en forma alguna que el Lcdo. Carrillo no recibiera la sentencia. En todo caso, se trata de que no la recibió en la dirección usual del Departamento de Justicia, pero ello no implica que la sentencia no haya sido debidamente notificada y que el recurso ante nos sea prematuro. Por dicho motivo, no se justifica su desestimación por ese motivo.

Adjudicados los méritos del señalamiento de error en torno a la falta de notificación del recurso a los apelantes, atendemos en segundo lugar el primer error formal levantado por éstos.

## III

La ausencia de una parte indispensable en el pleito cuyos intereses podrían ser afectados por el resultado final del pleito.

## A

Al discutirlo, los apelantes alegan que para que en su día pudiera emitirse una sentencia que concediera un remedio efectivo y completo que no perjudique el derecho de una persona ausente, debía traerse como demandado a quien en efecto había construido el muro y el paseo: al desarrollador del Condominio. Señalan que de la Resolución que en su día emitió la Junta de Planificación de Puerto Rico para aprobar la creación del complejo, surgía que el referido foro nunca estableció como requisito que el muro y el paseo fueran construidos dentro de la zona marítimo-terrestre, sino que los mismos se construyeran paralela o al margen de la misma. Por esta razón concluyen que era necesario traer al desarrollador y constructor del muro y el paseo, para precisar e indagar sobre lo allí edificado.

Por su parte, el Municipio le imputa incuria al E.L.A., pues esperó 20 años de presentada la demanda para alegar que faltaba una parte indispensable en el pleito. Veamos.

## B

La Regla 16.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone lo siguiente:

*"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandada rehusare hacerlo, podrá unirse como demandada."*

Esta regla tiene como propósito proteger a los ausentes de resoluciones de un caso que los pudiera afectar. *Hernández v. Romero Barceló*, 112 D.P.R. 407 (1982).

Ahora bien, contrario a lo que plantea el Municipio, la falta de parte indispensable puede ser considerada *sua sponte* por el tribunal, aun en la etapa apelativa, *Hernández Agosto v. López Nieves*, 114 D.P.R. 576 (1983), pues esta defensa constituye una excepción a la Regla 10.7 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, ya que nunca se entiende renunciada.

A esos fines, la Regla 10.8 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que *"la defensa de . . . haber omitido acumular una parte indispensable como se dispone en la Regla 16 . . . puede hacerse mediante cualquier alegación permitida u ordenada según lo dispuesto en la Regla 5.1. de . . . haber omitido acumular una parte indispensable como se dispone en la Regla 16 . . . puede hacerse mediante cualquier alegación permitida u ordenada según lo dispuesto en la Regla 5.1."*

## C

Considerado el estado de derecho, concluimos que los apelantes no tienen razón.

Como indicamos, la Asociación renunció a su reclamación de compensación por los daños y perjuicios que alegadamente sufrió el Condominio debido a la falta de mantenimiento del muro de contención y el paseo. Su acción se redujo desde entonces a que se determine quién tiene la obligación de mantenerlas y corregir o evitar el alegado peligro o amenaza de deterioro a que está expuesto el Condominio administrado por la Asociación.

Desde esa perspectiva, la presencia como parte indispensable del constructor del Condominio ya no es necesaria para adjudicar la procedencia del remedio pendiente y solicitado en la demanda: *"... que se ordene la construcción inmediata de un muro de contención adecuado para corregir la situación alegada y evitar la continuación de los daños alegados;"* pues como veremos más adelante, en este pleito no existe controversia en

cuanto a que el muro de contención y el paseo están ubicados en la zona marítima-terrestre.

La concesión de ese remedio no afecta al constructor y su ausencia no impide esa adjudicación, pues, de existir como empresa a esta fecha, el constructor no puede ser obligado a que realice una edificación privada en una zona marítimo-terrestre.

El primer error no fue cometido. ■

## IV

### A

Por estimar que están íntimamente relacionados, discutiremos conjuntamente los errores segundo y tercero.

Al discutirlos, los apelantes señalan que no está en controversia que el constructor, Viñas & López, construyó el muro de contención y el paseo objeto de la demanda; que, conforme la Ley Núm. 59 de 29 de mayo de 1968, la Laguna del Condado fue denominada Parque Estatal de la Laguna Condado y que el 23 de diciembre de 1988, el mismo fue transferido al Fideicomiso; que de la propia moción de sentencia sumaria de la Asociación se desprende que el Fideicomiso había llevado a cabo actos que eran cónsonos con las facultades y poderes adscritos al mismo; que de la declaración jurada de Rosa Yambó Santiago se desprende que no existió cesión alguna a Fomento Recreativo para fines de administración, mantenimiento y conservación de los terrenos circundantes a la Laguna del Condado; que de acuerdo con el Fideicomiso, el muro lo construyó el desarrollador; **que éste nunca había pasado a agencia gubernamental alguna** y que el Administrador del Fideicomiso aceptó que la zona marítimo-terrestre estaba bajo la jurisdicción del Fideicomiso.

Por otro lado, indicó que la Ley expresamente dispone que al Secretario del DRNA le corresponde poner en vigor programas para la utilización y conservación de los recursos naturales de acuerdo con las normas que establezca la Junta de Calidad Ambiental y que las Leyes que rigen al DRNA no lo obligan a dar mantenimiento a estructuras u obras por el hecho de que éstas se encuentren en bienes de dominio público; que el tribunal apelado aplicó erróneamente la doctrina del derecho de accesión porque no existe disposición legal alguna que establezca que por el hecho de que el DRNA ejerza las funciones de vigilancia y conservación de la zona marítimo-terrestre adviene automáticamente en titular de estructuras edificadas sobre ésta y, por consiguiente, que tenga la obligación de darle mantenimiento a dichas estructuras.

Señala que, dado que la certificación registral que obra en el expediente indicaba que el paseo y el muro habían sido construidos por el desarrollador, es al Condominio al que le corresponde darle el mantenimiento para su beneficio; y que, aunque tanto el E.L.A. como el DRNA admitieron en corte abierta que eran los dueños de la zona marítimo-terrestre donde ubica el muro de contención y el paseo, el tribunal *a quo* erró al imponerle la responsabilidad de mantener el muro basándose en la doctrina de accesión al concluir que tanto el muro como el paseo le pertenecen al E.L.A.

El Municipio, por su parte y en síntesis, respalda la posición del tribunal de instancia al aplicar el derecho de accesión. Sostiene, además, que el DRNA es el responsable de la zona marítimo-terrestre y, por ende, de lo que está en la superficie. Resolvemos.

### B

Esta causa se inició cuando la Asociación instó la demanda alegando que los apelantes eran los dueños de la zona marítimo-terrestre, así como del muro de contención y el paseo de tres metros de ancho ubicado allí, y que lo tenían bajo su posesión; que estas estructuras están deteriorándose de tal forma que las aguas de la Laguna del Condado están pasando por debajo del paseo y socavan los cimientos del edificio, poniendo en peligro los cimientos del edificio.

Inicialmente, instaron dos reclamaciones: 1) La hoy renunciada acción en daños y perjuicios, y 2) que se le ordenara a los demandados -los apelantes u otros organismos gubernamentales-, la construcción inmediata del muro de contención para corregir la situación.

Como ya expusimos antes, tanto los apelantes como otras partes que fueron demandadas trabaron una controversia en torno a la titularidad y responsabilidad de cada cual sobre el terreno donde ubican y el paseo y el muro de contención. Al momento de la adjudicación de la sentencia sumaria sólo quedaban en el pleito como demandados, los apelantes, el Fideicomiso y el Departamento de Recreación y Deportes.

En cuanto a los apelantes y en su dictamen sumario, el tribunal de instancia se limitó a declarar que éstos eran los titulares de la zona marítimo-terrestre localizada al Norte de la Laguna del Condado, colindante con el Sur del Condominio, del muro de contención y del paseo de tres metros de ancho edificado sobre la referida zona. No concedió el remedio que todavía quedaba pendiente de adjudicación y que es la solicitud principal de la Asociación: la orden para que se construya inmediatamente un muro de contención adecuado para corregir la situación. Ello está pendiente.

Toda vez que el remedio principal solicitado por la Asociación no ha sido considerado y adjudicado, nuestra función revisora se limita a enjuiciar la corrección de la titularidad decretada por el tribunal de instancia. Veamos.

Debemos comenzar por exponer los hechos que el tribunal de instancia estimó que no estaban en controversia:

*"1. El Condominio del Mar está sometido al Régimen de Propiedad Horizontal según surge de la Escritura Pública 46 de 17 de febrero de 1964 otorgada en San Juan, Puerto Rico, ante el Notario Jorge Souss, e inscrita al folio 90 vuelto del tomo 467, finca 15,709 de Santurce Norte, Registro de la Propiedad, Sección Primera de San Juan.*

*2. El Régimen de Propiedad Horizontal del Condominio del Mar fue enmendado mediante la Escritura Núm. 230 de 22 de abril de 1964 y la Escritura Núm. 186 de 5 de noviembre de 1964, otorgadas en San Juan, Puerto Rico, ante el Notario Jorge Souss.*

*3. El Condominio del Mar fue construido en el siguiente solar:*

*"Urbana: solar Número M-3-A del plano preparado por el Ingeniero Don J.M. Canals, titulado REPARTO CONDADO ubicado en el sitio conocido por el Condado de la Sección Norte del Barrio Santurce de San Juan, Puerto Rico, con cabida superficial de 3,098.54 metros cuadrados, colindando por el NORTE en 45.00 metros con la calle Marseilles; por el SUR en 29.82 metros y 22.49 metros con paseo a construirse que separa de la Laguna del Condado; por el ESTE, en 77.66 metros con la Calle Delcasse y por el OESTE en 54.44 metros con el solar M-3-B de dicho Reparto propiedad de César A. Carrero."*

*4. Consta inscrita dicha propiedad al folio 247 vuelto del tomo 407 de Santurce Norte, Registro de la Propiedad, Sección Primera de San Juan.*

*5. El solar donde fue construido el Condominio del Mar fue segregado de la finca 14,441, inscrita al folio 124 del tomo 397 de Santurce Norte, inscripción 1ra., que dispone su descripción de la siguiente manera:*

*(...)*

*6. La colindancia Sur del Condominio del Mar es la Laguna del Condado.*

7. El 27 de junio de 1956, la Junta de Planificación de Puerto Rico, Oficina del Gobernador, Estado Libre Asociado de Puerto Rico expidió el Informe 20623, Caso 17,504 Lot., Aprobando Plano de Inscripción para Lotificación en el sitio denominado Condado del Barrio Santurce de San Juan.

8. La Junta de Planificación aprobó la formación de diez (10) solares, donde se incluye el solar M-3-A (donde se construyó el Condominio del Mar) y requirió del desarrollador Condado Development, la construcción de todas las facilidades de calles, sistema de distribución eléctrica, de agua y alcantarillado sanitario, muro de contención paralelo al margen de la Laguna del Condado y relleno hasta el nivel correspondiente, así como el traspaso de un predio denominado "A" en dicho plano a favor de la Autoridad de Acueductos y Alcantarillados.

9. La aprobación emitida por la Junta de Planificación se fundamenta en el plano presentado con señalamiento de las cabidas, rumbos, distancia entre otros, así como un callejón o paseo de tres (3) metros de ancho que habría de construirse al margen de la Laguna del Condado, área Norte y al Sur del solar M-3-A, hoy Condominio del Mar.

10. La aprobación emitida por la Junta de Planificación no requirió segregación adicional a la establecida para la Autoridad de Acueductos y Alcantarillados.

11. La Laguna del Condado es un cuerpo de agua de dominio público.

12. La Laguna del Condado es un Parque Estatal.

13. Mediante la Escritura Núm. 3 de 23 de diciembre de 1988 otorgada en San Juan, Puerto Rico, ante el Notario Esperanza Esteban Rodríguez, la Compañía de Fomento Recreativo constituye el Fideicomiso para el Desarrollo, Operación y Conservación de los Parques Nacionales.

14. Mediante la Escritura Número 4 de 17 de diciembre 1992 otorgada en San Juan, Puerto Rico, ante el Notario Rafael A. Nadal Arcelay se otorga Acta Aclaratoria y Ratificación de Constitución de Fideicomiso.

15. En virtud de las Escrituras 3 y 4, antes referidas se traspasa el Parque Nacional Laguna del Condado al Fideicomiso para el Desarrollo, Operación y Conservación de los Parques Nacionales.

16. El área Norte de la Laguna del Condado colinda con el área Sur del Condominio del Mar.

17. En el área Norte de la Laguna del Condado se encuentra el área denominada zona marítimo-terrestre.

18. El muro y paseo construido de conformidad con el plano aprobado por la Junta de Planificación al lado Sur del Condominio del Mar ubica en la zona marítimo-terrestre de la Laguna del Condado.

19. El Departamento de Recursos Naturales del Estado Libere Asociado ejerce vigilancia y conserva las aguas territoriales, terrenos sumergidos bajo ellas y la zona marítimo-terrestre.

20. El Estado Libre Asociado, en representación del Departamento de Recursos Naturales y Ambientales aceptaron que el muro y paseo del caso de autos está ubicado en la zona marítimo-terrestre."

Examinados los documentos sometidos por las partes a favor y en contra de la moción de sentencia sumaria instada por la Asociación y los que obran en autos, se puede concluir lo siguiente:

"1. El muro de contención y el paseo fueron y están construidos sobre la zona marítimo-terrestre del norte

*de la Laguna del Condado que colinda con el Sur del terreno donde ubica el Condominio administrado por la Asociación. Así lo estipularon finalmente los Apelantes ante el tribunal a quo el 24 de enero de 2000. En otras palabras, esas estructuras no están ubicadas ni forman parte de la propiedad del Condominio.*

*2. No existe controversia alguna en cuanto a que en su Informe Núm. 20623 del 27 de junio de 1956, la Junta de Planificación de Puerto Rico autorizó la segregación de 10 solares de la finca Núm. 15709 de la cual provinieron las fincas sobre las que se construyó el Condominio. La Junta de Planificación requirió, entre otras cosas, la construcción de un muro de contención y un paseo de 3 metros de ancho "paralelo al margen de la Laguna del Condado y **relleno hasta el nivel correspondiente**".*

*3. Según los planos y los documentos de la Junta de Planificación de Puerto Rico de esa época y de las constancias en el Registro de la Propiedad, Sección Primera de San Juan, la Junta de Planificación no le requirió a la empresa promovente de la segregación, como condición para autorizar la segregación de los 10 lotes de la finca original, que se segregara terreno alguno de esa finca para la construcción del muro de contención y el paseo. Tal proceder fue distinto al seguido en cuanto a la Autoridad de Acueductos y Alcantarillados.*

*4. Al requerir la construcción del muro de contención y el paseo de 3 metros de ancho, la Junta de Planificación también requirió el "**relleno hasta el nivel correspondiente**", pero no existe prueba alguna que permita inferir que con ello se autorizó o no que se le ganara terreno a la laguna en la zona marítimo-terrestre para la construcción del paseo. Ello no está claro.*

*5. Salvo la alegación de los apelados, no existe documento alguno que sostenga la tesis de éstos de que el constructor fue negligente al cumplir con el requerimiento de la Junta de Planificación en 1956 o que no fue autorizado a realizar la obra en la zona marítimo-terrestre. Nadie ha presentado prueba tampoco sobre si la expresión "paralelo al margen de la Laguna del Condado" utilizada por la Junta de Planificación de Puerto Rico significaba que se autorizaba la construcción del muro de contención y el paseo sobre otra área que no fuera la zona marítimo-terrestre, aledaña a la propiedad privada del Condominio. No se ha presentado prueba sobre si existía algún terreno entre la propiedad del Condominio y la zona marítimo-terrestre."*

Ahora bien, resulta evidente que gran parte del tiempo de los 20 años que han transcurrido en la litigación de este pleito, las partes se han dedicado a promover **de forma algo inusitada e impráctica que se determinara sumariamente**, dónde estaban localizadas las estructuras aludidas, cómo se originaron y qué organismo gubernamental debía mantenerlas.

No obstante, a pesar de que, a nuestro juicio, un análisis cuidadoso y responsable de la prueba documental presentada permitía hacerlo mucho antes, la controversia en torno a la ubicación de las estructuras objeto del pleito finalizó cuando el 24 de enero de 2000, las apelantes estipularon que el muro de contención y el paseo objeto del pleito estaban localizados en la zona marítimo-terrestre.

Estimamos que, debido a ese curso y estilo de litigación promovido principalmente por los distintos organismos gubernamentales en el pleito, las partes no sometieron prueba documental en cuanto a si, luego de construidos, el muro de contención y el paseo fueron entregados o recibidos por alguna dependencia gubernamental, a pesar de que la construcción de esas estructuras trasciende la utilidad privada, tiene un uso y beneficio público y fue requerido por la Junta de Planificación de Puerto Rico.

Además, no se ha producido prueba documental que arroje luz en torno a qué respondió la solicitud de la Junta de Planificación de Puerto Rico de que tales obras se realizaran, o si fue alguna dependencia o agencia de gobierno en 1956 que la solicitó.

A nuestro juicio, lo importante es que no existe controversia desde el 27 de enero de 2000, fecha en que los apelantes así lo aceptaron, que las edificaciones u obras objeto del pleito están ubicadas en la zona marítimo-terrestre, y que la controversia que continúa pendiente de adjudicación es qué dependencia gubernamental es la llamada a mantener, reparar o eliminar esas obras, si éstas son inservibles. ■

Con este trasfondo es que el tribunal de instancia adjudicó que al E.L.A. y al DRNA le corresponde la obligación de mantener las estructuras en la zona marítimo-terrestre. Al sí hacerlo, se basó en las disposiciones sobre accesión del Código Civil de Puerto Rico. Sin embargo, debemos concluir que se equivocó al apoyar su decisión en la figura de la accesión. Veamos.

## C

El Artículo 297 del Código Civil, 31 L.P.R.A. sec. 1164, dispone, en lo pertinente lo siguiente:

*"El dueño del terreno en que se sembrare o plantare de buena fe, tendrá derecho a hacer suya la siembra o plantación, previa la indemnización establecida en las secs. 1468 y 1469 de este título, o a obligar al que plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente. El dueño del terreno en que se edificare de buena fe, tendrá derecho a hacer suya la obra, previo el pago al dueño de la obra del costo de los materiales y la mano de obra, o del costo de reproducción de la misma al momento en que el dueño del terreno ejercitare su derecho, deduciendo la depreciación, lo que resultare mayor, o a obligar al que fabricó a pagar el precio del terreno."*

Como puede apreciarse de su texto, este artículo **le concede la opción** al dueño del terreno de hacer suya la edificación, previa la indemnización correspondiente, o de obligar al dueño de la edificación a pagar el precio del terreno. *E.L.A. v. Tribunal Superior*, 94 D.P.R. 157 (1967). No le concede derecho al dueño del terreno título automático sobre lo edificado en el terreno. Tampoco implica que el edificante en terreno ajeno tiene el derecho de obligar al dueño del terreno a ejercitar su opción. *E.L.A. v. Tribunal Superior, supra*, pág. 162.

A la luz de lo antes expuesto y considerados los hechos que no están en disputa en este caso, resulta evidente que **la Asociación no es la dueña del muro de contención y del paseo**, no lo ha reclamado ni puede reclamarlo para sí. Estas obras fueron construidas en 1956 por el constructor o desarrollador como condición para que se aprobara la segregación de la finca 14,441 y **a solicitud de la Junta de Planificación de Puerto Rico de aquel entonces, como condición para concederla**.

Aun asumiendo que la Asociación o el Condominio fuera el dueño de las estructuras, el articulado citado por el tribunal de instancia en su dictamen, lo más que hace es concederle una opción al dueño del terreno para hacer suya la edificación previa la indemnización correspondiente o para obligar al dueño de la edificación a pagar el precio del terreno, a nada más. *E.L.A. v. Tribunal Superior, supra*. No le confiere automáticamente al dueño del terreno, el título de dueño sobre lo edificado en ella.

Por otro lado, el terreno donde se construyeron las edificaciones objeto del pleito no es un terreno ordinario y convencional. Se trata de la zona marítimo-terrestre. Esta se define como *"el espacio de las costas de Puerto Rico que baña el mar en su flujo y reflujo, en donde son sensibles las mareas, y las mayores olas en los temporales en donde las mareas no son sensibles, e incluye los terrenos ganados al mar y las márgenes de los ríos hasta el sitio en que sean navegables o se hagan sensibles las mareas; y el término, sin condicionar, significa la zona marítimo-terrestre de Puerto Rico"*. Ley Núm. 151 de 28 de junio de 1958, mejor conocida como la Ley de Muelles y Puertos de 1968, 23 L.P.R.A. sec. 2103(n).

Esta definición proviene de la Ley de Puertos española de 7 de mayo de 1880, la cual se hizo extensiva a Puerto Rico el 5 de febrero de 1886. Dicha ley aún rige en esta jurisdicción. *Rubert Armstrong v. E.L.A.*, 97 D. P.R. 588, 623 (1969). ■

Ello armoniza con los Artículos 254 y 255 del Código Civil, secs. 1023 y 1024, respectivamente. Dichos artículos disponen lo siguiente:

*"Artículo 254. Cosas comunes, definición de*

*Las cosas comunes son aquéllas cuya propiedad no pertenece a nadie en particular y en las cuales todos los hombres tienen libre uso, en conformidad con su propia naturaleza: tales como son el aire, las aguas pluviales, el mar y sus riberas.*

*Artículo 255. Bienes de dominio público*

*Son bienes de dominio público, los destinados al uso público, como los caminos, canales, ríos, torrentes y otros análogos."*

Ahora bien, aunque el Artículo 254, *supra*, tiene su procedencia en el Artículo 450 del Código Civil de Louisiana, legislación española anterior a la Ley de Puertos de 1880, recogía la noción de cosa común contenida en nuestro Código Civil. A esos efectos, la Ley de Aguas de 1886, extendida a Puerto Rico, indicaba en su Exposición de Motivos que *"por dominio público de la Nación entiende el que a ésta compete sobre aquéllas cosas cuyo uso es común por su propia naturaleza o por el objeto a que se hallan destinadas; tales son, por ejemplo, las playas, ríos, caminos, muelles y puertos públicos; su carácter principal es ser inajenable e imprescriptible."* Rubert Armstrong v. E.L.A., *supra*, a la pág. 620. Así pues, lo que es de dominio público como la zona marítimo-terrestre, no es susceptible de propiedad privada de los particulares. *Id.*

Aun, el terreno ganado al mar se considerará de uso público. El Artículo 1.4(B)(3) del Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos bajo éstas y la Zona Marítimo-Terrestre, Núm. 4860 de 29 de diciembre de 1992, según enmendado, dispone claramente que se considerarán bienes de uso público cubiertos por dicho reglamento *"los terrenos ganados al mar como consecuencia directa o indirecta de obras, y los desecados en la ribera"*.

## D

En este caso, los documentos obrantes en autos y que fueron considerados por el tribunal de instancia, permiten la inferencia de que el paseo de 3 metros de ancho está construido entre el muro de contención y la colindancia de la propiedad privada del Condominio, sobre un terreno que con toda probabilidad fue ganado al mar por causa de obras humanas. Al estar, como estipulan los apelantes, en la zona marítimo-terrestre, son de dominio público y no privado. *Rubert Armstrong v. E.L.A., supra.* Implícito está, que siendo la zona marítimo-terrestre de dominio público y las cosas construidas en ellas consecuencia del requerimiento de la Junta de Planificación de Puerto Rico, el muro de contención y el paseo se convirtieron en obras de dominio público, como el área en la que fueron construidas.

De lo anterior se colige que, como bien resolviera indirectamente el tribunal de instancia, la Asociación o el Condominio no puede ejercer ningún acto de dominio sobre la zona marítimo-terrestre ni sobre las edificaciones construidas en ella. De ahí que, como resulta evidente, la Asociación nunca ha reclamado titularidad sobre las mismas. No pueden.

Por otro lado, el que la zona marítimo-terrestre y las obras sea de dominio público no implica que pertenezcan al E.L.A. o a un organismo o agencia pública. ■ En *Gobierno de la Capital v. Consejo Ejecutivo*, 63 D.P.R. 434, 459 (1944), se dijo que los bienes de uso público se usan libremente por el público en general, mientras que a los bienes patrimoniales del Estado, el público no tiene constante y general acceso, a pesar de que nada impide que se les puede dar un uso público ocasionalmente. Estos bienes, como toda propiedad particular, pueden constituir fuente de ingresos para el erario público o son susceptibles de producir ingresos,

para cubrir atenciones del Estado; están o pueden estar en el comercio jurídico humano porque pueden ser vendidos o arrendados, generalmente, por el Secretario de Obras Públicas, en las formas legalmente dispuestas.

En fin y por los fundamentos expuestos, el tribunal de instancia erró, como cuestión de derecho, al concluir que el E.L.A. y el DRNA eran los titulares de la zona marítimo-terrestre en cuestión, así como el muro de contención y el paseo. En realidad, la zona marítimo-terrestre, así como el muro de contención y el paseo de 3 metros de ancho construidos sobre ésta a requerimiento de la Junta de Planificación de Puerto Rico en 1956, son de dominio público del E.L.A.

El derecho del Estado, departamento o municipio sobre los bienes de su dominio público **no es un derecho de propiedad**, pues no comprende los atributos esenciales de la propiedad *usus, fructus, abusus*. El dominio público pertenece, en tanto que dura su afectación, **más bien al uso público** que a la persona moral de que depende. La persona moral no tiene sobre esta parte de su dominio más que un derecho de guarda, de gestión de administración, y no como se ha dicho derecho de propiedad. Colin y Capitant, *Curso Elemental de derecho Civil,* Tomo Segundo, Vol. II, 3era. Ed., 1952, págs. 71 y ss.

Por último, los reclamos de los apelantes en cuanto a la alegada negligencia del constructor el construir fuera de sitio el muro de contención y el paseo, no están sustentados por prueba alguna y constituyen meras alegaciones.

## V

Ahora bien, aunque erró al imputarle titularidad, ¿podía el tribunal de instancia adjudicar sumariamente que el DRNA o el E.L.A. son responsables por el mantenimiento, preservación o su eliminación, de ser ello necesario, las edificaciones sobre la zona marítimo-terrestre de la Laguna del Condado que nos ocupa, que fueron requeridas por la Junta de Planificación de Puerto Rico, conforme el derecho y práctica prevaleciente en los 1950, aun cuando se desconozca si alguna agencia u organismo gubernamental la aceptó luego de construida? Más aún, ¿podía determinar que dependencia es la llamada a ejercer esos deberes? Veamos.

## A

La Sección 19 del Artículo VI de la Constitución de Puerto Rico dispone que *"será política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad"*. Con el propósito de instrumentar esa política pública, la Asamblea Legislativa de Puerto Rico aprobó la Ley Orgánica del D.R.N.A., Ley Núm. 23 del 20 de junio de 1972, según enmendada, 3 L.P.R.A. sec. 151 *et. seq.*

Cónsono con el mandato constitucional, el Artículo 5(h) de la referida ley, *Id.*, sec. 155(h), faculta al Secretario del D.R.N.A. a *"ejercer la vigilancia y conservación de las aguas territoriales, los terrenos sumergidos bajo ellas y la zona marítimo-terrestre, conceder franquicias, permisos y licencias de carácter público para su uso y aprovechamiento y establecer mediante reglamento los derechos a pagarse por los mismos"*.

Al interpretarse la anterior disposición, se ha dicho que *"el uso y aprovechamiento autorizado deberá estar disponible para el público o la ciudadanía en general, es decir, que no se podrá restringir dicho uso o aprovechamiento a una persona o una entidad, o un grupo de personas o entidades en particular"*. Op. Sec. Just. Núm. 2 de 16 de enero de 1990.

Por un lado, la función del D.R.N.A. goza del más alto interés público, ya que la zona marítimo-terrestre constituye un bien de dominio público, **bajo la jurisdicción y autoridad del Gobierno de Puerto Rico.** Véanse, Artículo 1 de la Ley de Puertos de 1880; Artículos 7 y 8 de la Ley de Relaciones Federales con Puerto Rico, Ley Núm. 151 de 28 de junio de 1968, según enmendada, 23 L.P.R.A. sec. 2101, *et. seq.*; *Rubert*

*Armstrong v. E.L.A., supra,* pág. 623.

Todo indica que la facultad delegada no consiste solamente en la conservación de dichos bienes, sino que también incluye su uso, aprovechamiento y desarrollo, sujeto a que ello redunde en el beneficio general de la comunidad. En otras palabras, debe existir un fin público que justifique ese uso, aprovechamiento o desarrollo. *Id.*

El Artículo 1.4(B)(3) del Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos bajo éstas y la Zona Marítimo-Terrestre, Núm. 4860 de 29 de diciembre de 1992, según enmendado, dispone claramente que se considerarán bienes de uso público cubiertos por dicho reglamento *"los terrenos ganados al mar como consecuencia directa o indirecta de obras, y los desecados en la ribera".*

Uno de las razones para la promulgación de dicho reglamento era precisamente la preocupación por *"el aprovechamiento privado de bienes de dominio público, reflejado por la privatización de facto de la zona marítimo-terrestre mediante construcciones que reducen parcial o totalmente los accesos a las playas; el menoscabo de la integridad de los sistemas naturales típicos de la costa, reflejado por el vertido, con y sin autorización, de aguas residuales o por el acceso a éstos de personas en exceso de su capacidad de acarreo; el incremento en los riesgos a la seguridad pública y propiedad, resultantes de construcciones y desarrollos dentro de la zona marítimo-terrestre que ocasionan la erosión y degradación del litoral...".* Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos bajo éstas y la Zona Marítimo-Terrestre, *supra,* Artículo 1.3.

No obstante, el E.L.A. y el DRNA alegan que: (1) el Fideicomiso es el obligado a darle mantenimiento y a conservar el área donde ubica el muro de contención y el paseo, pues forma parte del Parque Laguna del Condado bajo su control por virtud de lo dispuesto en las leyes Núm. 59 del 29 de mayo de 1968, 15 L.P.R.A. secs. 1 *et seq.,* y Núm. 126 del 13 de junio de 1980, así como en la escritura que constituyó el Fideicomiso; (2) que la función del DRNA es solamente mantener los recursos naturales y no las edificaciones sobre la zona marítimo-terrestre.

Aunque hemos resuelto que las edificaciones sobre la zona marítimo-terrestre construidas por requerimiento de la Junta de Planificación de Puerto Rico son también de domino público, un examen de los documentos sometidos revela sin dificultad que existe controversia y falta de claridad en cuanto a lo que incluye el mantenimiento de la zona marítimo-terrestre de la Laguna del Condado, particularmente, en el área donde ubica el muro de contención y el paseo aludidos, y sobre qué organismo del Estado es el responsable de hacerlo. La cuestión luce ser una mixta de hecho y de derecho. En todo caso, la documentación en los autos no permite su adjudicación sumaria y ésta debe ser adjudicada luego de celebrar un juicio plenario.

Aunque el DRNA, como agencia del E.L.A., tiene una obligación estatutaria de mantener y preservar los recursos naturales y entre ellos la zona marítimo-terrestre, surge de la prueba que consta en el expediente que existe controversia sobre esa responsabilidad. El 27 de junio de 1989, el entonces Director del Fideicomiso respondió bajo juramento de la siguiente forma a las preguntas que la Asociación le había remitido a través de un interrogatorio escritorio:

*"Pregunta:*

*2. Indique a quién o a quiénes ha pertenecido o pertenece la franja de terreno que discurre desde el Puente Dos Hermanos colindando con la Laguna del Condado hasta la ubicación con la calle Delcasse, Condado, Puerto Rico.*

*Contestación:*

*2. Desde el 29 de mayo de 1968, está bajo la jurisdicción de la Administración de Parques y Recreos (ahora Departamento de Recreación y Deportes) y la Compañía de Fomento Recreativo, adscrita al Departamento de Recreación y Deportes, entidad que está adscrita a la Compañía de Fomento Recreativo en virtud del Art. 9 de la ley Núm. 126 del 13 de junio de 1980, según enmendada. El 23 de diciembre de 1988, pasa bajo la jurisdicción del fideicomiso.*

*Pregunta:*

*3. Especifique el nombre del titular, fecha de tenencia, así como transacciones, si alguna, que ha habido con dicha faja de terreno.*

*Contestación:*

*3. Está bajo la jurisdicción del Fideicomiso de Parques Nacionales de Puerto Rico según consta en la Escritura Núm. 3 del 23 de diciembre de 1988 suscrita ante la Notario Público Esperanza Estaban Rodríguez."*

Como puede observarse, la contestación bajo juramento del Director del Fideicomiso constituye evidencia documental tendente a demostrar que tanto el muro como el paseo estaban bajo la jurisdicción del Fideicomiso, lo que implica que el mantenimiento y todos los actos a fines a tal función eran de esta institución.

La Asociación presentó como prueba documental, además, la Escritura Número 3 del 23 de diciembre de 1988 para demostrar que la posesión del Parque Nacional Laguna del Condado le fue transferida al Fideicomiso, y que por ello, es éste el *"titular del muro y del paseo"* objeto de la controversia que pende ante nos. Se desprende también que el referido parque colindaría por el Norte con terrenos de varios Condominios y otros, por el Sur con la Avenida Baldorioty de Castro, por el Este con la Calle Wilson y Calle Vieques y por el Oeste con el Puente Dos Hermanos; pero que ello ocurriría cuando se agruparan varios predios de terrenos **propiedad de diferentes agencias y corporaciones del Estado Libre Asociado de Puerto Rico, en específico, propiedad de Pridco y de la PREPA (AEE).**

Por otro lado, no está claro, por no haberse presentado prueba documental a esos efectos, si de acuerdo con la referida escritura, las paredes fueron en efecto agrupadas; si tanto Pridco como la Prera (AEE) dejaron de ser las propietarias o transfirieron el título de las parcelas que integrarían el Parque Nacional de la Laguna del Condado, que como se ha visto colindaría por el Norte con los terrenos de varios condominios. Entre esos terrenos, y de acuerdo con la propia Asociación, están los pertenecientes al Condominio.

En el análisis final, el tribunal de instancia tampoco podía determinar sumariamente a qué organismo gubernamental, si al DRNA o al Fideicomiso, le corresponde la obligación de mantener el muro y el paseo en cuestión por el hecho de tener jurisdicción sobre el área donde estas estructuras se encuentran, y si procede una orden para ordenarle a construir el muro de contención.

**B**

Como es conocido, la moción de sentencia sumaria es aquélla mediante la cual una parte le solicita al tribunal que dicte sentencia a su favor, basándose en la prueba que se acompaña a la moción, sin necesidad de que se celebre vista en su fondo y en casos en los cuales en realidad no exista controversia real sobre ningún hecho material. *Jusino Figueroa v. Walgreens of San Patricio*, **2001 J.T.S. 154**.

Si el que solicita que se dicte sentencia sumaria cumplió con su obligación de demostrar que no existe controversia sustancia en cuanto a los hechos pertinentes y que procede que se dicte sentencia sumaria como

cuestión de derecho, la parte contra quien se solicita la sentencia no puede derrotar la moción cruzándose de brazos y descansar en lo expuesto en las alegaciones de la demanda. Para derrotar la moción, tendrá que demostrar que tiene prueba para sustentar sus alegaciones. *Audiovisual Language v. Sistema de Estacionamiento Natal Hnos.*, 144 D.P.R. 563 (1997); Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S.**, Tomo I, 2000, a la pág. 608.

Como regla general, procede que se dicte sentencia sumaria a base de las declaraciones juradas y los documentos admisibles como evidencia sometidos por la parte promovente junto con su moción, los documentos sometidos por la parte promovida en su moción en oposición y aquéllos que obran en el expediente del tribunal. *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994).

En segundo lugar, el tribunal deberá determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos presentados. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994).

El tribunal no deberá dictar sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material, o (4) cuando no proceda como cuestión de derecho. *Id.*, a las págs. 913-914; *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272, 280 (1990).

Finalmente, la sentencia sumaria es un mecanismo para que el tribunal de instancia adjudique la totalidad de una reclamación o parte de ella. Reglas 36.1 y 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No es un mecanismo para que se determine parcialmente los hechos sobre los cuales existe o no controversia, salvo la situación contemplada en la Regla 36.4 del mismo cuerpo de reglas, *supra*, y ello solamente cuando el pleito no puede decidirse totalmente. Tampoco es un mecanismo para adjudicar controversias individuales cuando el pleito trata de una sola reclamación. Véase *Cortés Román v. E.L.A.*, 106 D.P.R. 504 (1977).

Conforme esta normativa, el tribunal de instancia no podía adjudicar sumariamente a quién le corresponde la obligación de mantener, preservar o reconstruir el muro de contención y el paseo objeto de este pleito.

## VI

Por los fundamentos antes expuestos, se dicta sentencia para confirmar la desestimación de la demanda de co parte contra el Municipio y el DRD; dejar sin efecto la desestimación de la demanda en cuanto al Fideicomiso; modificarla para dictaminar que el paseo y el muro de contención objeto del pleito son de dominio público al igual que la zona marítimo-terrestre y se devuelve el caso para que, previo juicio en los méritos, el tribunal de instancia resuelva: (1) si el DRNA, el Fideicomiso o ambos son los responsables del mantenimiento y preservación del muro de contención, y (2) si procede ordenarle al organismo que seleccione que reconstruya o construya el muro de contención objeto de la acción pendiente ante el foro apelado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 82**

**1.** Ello a pesar de que, como veremos más adelante, el tribunal de instancia desestimó la acción en su contra en el dictamen apelado.

**2.** El tribunal de instancia tampoco cumplió con las exigencias de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, lo que implicaría que el recurso para revisarla debió ser el *certiorari*.

**3.** Entre otros daños mencionaron los siguientes: roturas en las tuberías del Condominio y grietas en el área del estacionamiento, en áreas comunes y en el área de la piscina.

**4.** Antes había presentado una moción de desestimación a la que la Asociación se opuso. El apéndice del recurso no permite confirmar cuál fue el resultado, pero ello no tiene importancia, como se verá más adelante.

**5.** Específicamente se le preguntó a Díaz Tavárez lo siguiente:

*"Indique a quién o a quiénes ha pertenecido y/o pertenece la franja de terreno que discurre desde el puente Dos Hermanos colindando con la Laguna del Condado hasta la ubicación con la calle Delcasse, Condado, Puerto Rico".*

Su respuesta fue la siguiente:

*"Desde el 29 de mayo de 1968, bajo la jurisdicción de la Administración de Parques y Recreos (ahora Departamento de Recreación y Deportes) y la Compañía de Fomento Recreativo, adscrita al Departamento de Recreación y Deportes. Entidad que está adscrita a la Compañía de Fomento y Recreativo en virtud del Artículo 9 de la Ley Núm. 126 del 13 de junio de 1980, según enmendada. El 23 de diciembre de 1988, la jurisdicción del Fideicomiso.*

*A su vez se le solicitó que "Especifique el nombre del titular, fecha de tenencia, así como transacciones, si alguna, que ha habido con dicha faja de terreno".*

Y él contestó lo siguiente:

*"Está bajo la jurisdicción del Fideicomiso de Parques Nacionales de Puerto Rico según consta en la escritura Núm. 3 del 23 de diciembre de 1988, suscrita ante la Notario Público Esperanza Esteban Rodríguez."*

**6.** Inexplicablemente, volvió a archivar la demanda en cuanto al Municipio de San Juan, a pesar de que ya lo había hecho antes, y permitió el desistimiento en contra de Fomento Recreativo.

**7.** Ver la nota al calce número 2.

**8.** No podemos pasar por alto que resulta evidente que, aunque los apelantes puedan levantar la defensa de falta de parte indispensable en cualquier etapa de un pleito, no existe en este caso justificación razonable alguna para que lo hayan hecho casi 20 años después de presentada la demanda, en 1999. Ello prácticamente constituye un abuso de derecho que de no ser por la naturaleza irrenunciable del planteamiento, hubiera sido suficiente, a nuestro juicio, para rechazarla de plano y hasta imponer sanciones económicas a los abogados.

**9.** A todas luces, esta situación motivó que, de manera encomiable y en un esfuerzo que el dictamen demuestra, el tribunal de instancia intentara resolver la controversia de una vez por todas.

**10.** Por medio del Artículo VIII del Tratado de París de 11 de abril de 1898, todos los bienes de dominio público de la Corona de España en Puerto Rico fueron cedidos al Gobierno de los Estados Unidos. Luego quedaron bajo el dominio del Gobierno de Puerto Rico para que éste los administre a beneficio del pueblo puertorriqueño. Véanse, Sección 13 de la Ley Orgánica Foraker de 12 de abril de 1900, 31 Stat. 80; Artículos 7 y 8 de la Ley Orgánica Jones de 2 de marzo de 1917, *supra*; Artículo 7 de la Ley de Relaciones Federales con Puerto Rico, *supra*.

**11.** Ciertamente, el Gobierno de Puerto Rico puede adquirir bienes inmuebles para uso público conforme la Ley. Artículo 8 del Código Político. 1 L.P.R.A. sec. 5.

**12.** En la Cláusula Novena de la Escritura se establece lo que a continuación se transcribe in extenso:

*"TRANSFERENCIA DE BIENES INMUEBLES*

*La primera parte [el] tiene la posesión de la siguiente propiedad inmueble:*

*--Parque Estatua de la Libertad*

*--Parque Las Nereidas*

*--Parque Nacional Laguna del Condado*

*--Ubicación: La Ubicación de esta facilidad comprende la Utilización de varios predios de terreno propiedad de diferentes agencias y corporaciones del Estado Libre Asociado de Puerto Rico, los cuales se agruparán para que pasen a formar parte de una sola parcela cuya descripción será la siguiente:*

*--En lindes por el Norte terrenos propiedad de varios Condominios y otros, por el Sur Avenida Baldorioty de Castro, por el Este Calle Wilson y Calle Vieques y por el Oeste Puente Dos Hermanos.*

*Título: Disposición Legislativa mediante la Ley Número 59 del 29 de mayo de 1968, se declara Parque Estatal, la Laguna del Condado y los terrenos públicos que las circundan, los cuales estarán bajo la jurisdicción de la Administración de Parques y Recreos Públicos, hoy Departamento de Recreación y Deportes.*

*--Descripción de Parcelas que se agruparan:*

*--Parcela propiedad de Pridco (CFI) 444.16 metros cuadrados. Caso de expropiación forzosa 60-1287, Inscrita F17 T419 Finca 1872 Inscrip 10.*

*--Parcelas propiedad PREPA (AEE) 15, 444.843 metros cuadrados equivalente a 3.9293 cuerdas, cabida reflejada conforme a plano levantado en junio de 1987 por el Agrimensor Primitivo Colón Martínez. Licencia Núm. 7507*

*--Conforme a descripción en la escritura que posee la AEE, el referido predio corresponde a tres (3) parcelas de diferentes cabidas descritas a continuación:*

*Parcela número 1 de 3, 209.24 metros cuadrados. Inscrita Folio 150 Tomo 208, Finca 8,388. parcela número 2 de 7,798.54 metros cuadrados. Inscrita Folio 14, Tomo 46, Finca 1801. Parcela número 3 de 2,187.70 metros cuadrados. No aparece inscrita a favor de la AEE. No obstante, se propone llevar un Expediente de Dominio. Segregada de la Finca 241, la cual está inscrita al Folio 186, Tomo 228 propiedad de los Behn Brothers. La parcela número 1 y número 2 aparecen inscritas a favor de la Autoridad de Energía Eléctrica mediante la Escritura Uno de la Puerto Rico Light and Power de 1942."*