EL PUEBLO DE PUERTO RICO, apelado, *v.* REYNALDO HERNÁNDEZ MALDONADO, acusado y apelante.

*Número:* CR-89-57 *Resuelto:* 6 de diciembre de 1991

476

478

*Herminio Maldonado González* y *Enrique Rivera Mendoza,*
abogados del apelante; *Jorge E. Pérez Díaz, Procurador
General, Norma Cotti Cruz, Subprocuradora General,* y
*Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión
del Tribunal.

I

*Los hechos*

Contra el acusado apelante, Reynaldo Hernández Maldonado, se presentó una recusación por razón de domicilio
ante la Junta Local de Elecciones de Jayuya (en adelante
la Junta). Se alegó que el apelante no era residente del
pueblo de Jayuya y se solicitó la eliminación de su nombre
de la lista de peticiones de inscripción. La Junta determinó
que el apelante era residente de Jayuya, por lo que podía
votar en ese municipio. De esta determinación, el Sr. Jorge
L. González Otero, en representación del Partido Popular
Democrático (P.P.D.), presentó un recurso de apelación
ante el Tribunal de Distrito, Sala de Jayuya, a tenor con lo
dispuesto en el Art. 1.023 de la Ley Electoral de Puerto
Rico (en adelante Ley Electoral), Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3031.

El 4 de octubre de 1988 el tribunal dictó sentencia en la
que determinó que el apelante estaba domiciliado en Bayamón y no en Jayuya. Resolvió que procedía su recusación
como elector del pueblo de Jayuya y ordenó que se le excluyera de la lista de electores de ese municipio.

A pesar de que en el proceso ante el Tribunal de Distrito el apelante compareció mediante representación legal, la sentencia no se notificó ni al abogado ni al apelante.([1])

Así las cosas, el 8 de noviembre de 1988, día en que se celebraron las elecciones generales en Puerto Rico, el apelante se presentó en el Colegio de Votación del Barrio Gripiñas de Jayuya para emitir su voto. Allí, una funcionaria del Colegio le indicó que no podía votar debido a la existencia de una orden judicial de exclusión que lo eliminó de la lista de electores de Jayuya. No le mostró la orden. El apelante le manifestó a la funcionaria que él desconocía la existencia de esa orden, pues ésta no le fue notificada. Luego de ser informado del alegado contenido de la orden, el apelante no presentó objeción alguna a la funcionaria. Antes de marcharse del colegio se comunicó con un representante de su partido político, quien le expresó que tenía derecho a votar, por lo que debía acudir ante la Junta de Inscripción Permanente de Jayuya (en adelante la Junta de Inscripción). Así lo hizo. Una vez llegó a la Junta de Inscripción, los coordinadores de ésta revisaron el récord y otros documentos relacionados con el apelante como elector. Revisaron además la información de última hora, la más reciente contenida en el sistema de computadoras. Ninguno de los tres (3) coordinadores, miembros de la Junta de Inscripción, encontró impedimento legal alguno para que el apelante votara.([2]) Así lo hicieron constar en un documento oficial de la Junta de Inscripción —firmado por los tres (3) coordinadores— el cual entregaron al apelante para que lo llevara al Colegio de Votación.

---

([1]) La sentencia fue notificada únicamente al abogado del Partido Popular Democrático y a otro abogado, quien no representó a parte alguna en este proceso. Este abogado participaba en otros casos de la misma naturaleza. La notificación la hizo el Tribunal de Distrito de Adjuntas en Jayuya el 4 de octubre de 1988.

([2]) La orden de exclusión del apelante de la lista de electores de Jayuya, dictada por el Tribunal de Distrito, no constaba en ningún récord de la Junta de Inscripción Permanente de Jayuya. Todo parece indicar que la misma no fue notificada a esta Junta.

Documento en mano, el apelante se presentó nuevamente en el Colegio de Votación y lo mostró a los funcionarios electorales. Ante esta situación, los tres (3) funcionarios del colegio se reunieron y, constituidos en Junta, a pesar de que todos tenían conocimiento de la existencia de la orden judicial de exclusión, unánimemente permitieron al apelante emitir su voto mediante el proceso de recusación. Los funcionarios de colegio retuvieron su tarjeta electoral y el documento oficial emitido por la Junta de Inscripción. Además, le hicieron firmar otro documento que depositaron en un sobre junto con los documentos retenidos. El sobre se envió a la Comisión Estatal de Elecciones.

El 9 de febrero de 1989, tres (3) meses después de haber emitido su voto, el Estado presentó una denuncia contra el apelante, imputándole haber violado el Art. 8.025(b) de la Ley Electoral, 16 L.P.R.A. sec. 3375(b). En la denuncia se alegó que sin tener derecho a votar el apelante intentó y logró emitir su voto.

■ Celebrado el juicio ante el Tribunal Superior,[3] Sala de Utuado, el juez de instancia encontró al acusado apelante culpable del delito imputado y lo condenó a pagar trescientos dólares ($300) de multa.

Inconforme, el acusado acudió ante nos mediante un recurso de apelación.

---

[3] El Art. 8.025 de la Ley Electoral de Puerto Rico (en adelante Ley Electoral), Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3375, establece un delito menos grave. Este delito, sin embargo, cae bajo la jurisdicción original del Tribunal Superior de Puerto Rico. Véase el Art. 8.027 de la Ley Electoral, 16 L.P.R.A. sec. 3378.

## II

*Los elementos requeridos para que se configure el delito tipificado en el Art. 8.025(b) de la Ley Electoral de Puerto Rico*

El Art. 8.025(b) de la Ley Electoral, *supra*, en su parte pertinente dispone lo siguiente:

> Será sancionada con pena de reclusión por un término mínimo de un (1) mes y máximo de seis (6) meses, o multa mínima de cien (100) dólares y máxima de quinientos (500) dólares, toda persona que:
>
> . . . . . . . .
>
> (b) sin derecho a votar, intentare hacerlo, o que aun teniendo derecho a votar, intentare hacerlo más de una vez ....

El Estado alega que el Art. 8.025(b), *supra*, es de responsabilidad absoluta u objetiva, al cual el legislador le eliminó el requisito del elemento mental.

Los delitos de responsabilidad absoluta o responsabilidad penal objetiva son aquellos que, para configurarse, no requieren el elemento mental o culpabilidad. *Pueblo v. Delgado López*, 106 D.P.R. 441 (1977); *Pueblo v. Marrero*, 93 D.P.R. 694 (1966); *Pueblo v. Ruiz Vélez*, 85 D.P.R. 483 (1962); *Pueblo v. Andrades González*, 83 D.P.R. 849 (1961); *Pueblo v. Rivera*, 75 D.P.R. 425 (1953); *Pueblo v. Bou*, 64 D.P.R. 466 (1945); D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 5.9, págs. 166–167. Ahora bien, al referirnos a los delitos de responsabilidad absoluta, como muy bien señala la profesora Nevares-Muñiz en su obra, debemos tener presente que:

> Se trata de un limitado grupo de delitos relacionados con actos altamente peligrosos para el bienestar general y la seguridad de la comunidad (e.g. alimentos adulterados, contaminación ambiental, algunas violaciones a la ley de armas, sustancias controladas, explosivos, tránsito y vehículos de motor), así

como también algunos delitos que sería muy difícil probar si se requiriera establecer un elemento mental. En el caso de los últimos la pena no es severa.

Como los delitos de responsabilidad absoluta constituyen la excepción, si la ley nada dice respecto al elemento mental, se interpretará a los efectos de que tal elemento es necesario. En ese caso, la intención o negligencia deberá ser probada como cualquier otro elemento del delito. *Morrisette v. United States*, 342 U.S. 242 (1952). Nevares-Muñiz, *op. cit.*, pág. 167.

Un análisis del delito tipificado en el Art. 8.025(b) de la Ley Electoral, *supra*, refleja que éste no puede considerarse altamente peligroso para el bienestar general y la seguridad de la comunidad, ni mucho menos un delito que sería muy difícil probar si el elemento mental fuese requerido. Dicho artículo tampoco contiene lenguaje que nos lleve a concluir que el legislador haya prescindido del elemento mental como uno de los requisitos para que este delito se configure. Esto es cónsono con la regla general de que "[n]adie podrá ser sancionado por una acción u omisión que la ley provee como delito si la misma no se realiza con intención o negligencia criminal". Art. 14 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3061.

Sabido es que al interpretar una ley lo haremos "tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al 'fundamento racional o fin esencial de la ley' y a la política pública que la inspira". *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968). "Nuestra cardinal obligación es desentrañar y hacer prevalecer el propósito legislativo, imprimiéndole así efectividad." *A.R.Pᴇ. v. Rodríguez*, 127 D.P.R. 793 (1991). Véanse, además; *Pueblo v. Álvarez Torres*, 127 D.P.R. 830 (1991); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334, 342 (1986); Art. 19 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 19; R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed.,

San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 31, págs. 245–247.

 Una correcta hermenéutica también requiere que las leyes se analicen como un cuerpo, no de forma seccionada e inconexa. Las leyes "deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones". Bernier y Cuevas Segarra, *op. cit.*, Cap. 73, pág. 481; Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18; *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 820 (1986); *Pueblo v. Mantilla*, 71 D.P.R. 36, 42 (1950).

 Ahora bien, en términos generales y con relación a las violaciones del ordenamiento electoral, la propia Ley Electoral dispone, en su Art. 8.004 (16 L.P.R.A. sec. 3354), lo siguiente:

> *Toda persona que, a sabiendas y fraudulentamente, obrare en contravención de cualesquiera de las disposiciones de este Subtítulo*, o que teniendo una obligación impuesta por el mismo, voluntariamente dejare de cumplirla, o se negare a ello, será culpable de delito electoral y, de no proveerse en este Subtítulo, la imposición de una penalidad específica por tal violación, será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares, o ambas penas a discreción del tribunal. (Énfasis suplido.)

 El Art. 8.025(b) de la Ley Electoral, *supra*, es precisamente una de las disposiciones a que se refiere el antes citado artículo. Por lo tanto, analizando ambos artículos en conjunto y tomando en consideración las normas de derecho antes expuestas (en específico, el hecho de que la intención legislativa es proveer un sistema que facilite y haga viable la emisión del voto a todos los electores cualificados), concluimos que para que se configure el delito tipificado en el Art. 8.025(b), *supra*, es necesario probar que el imputado actuó "a sabiendas" de que obraba en contravención a lo allí dispuesto. *Pueblo v. Flores Betancourt*, 124

D.P.R. 867 (1989); Art. 15 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3062; Nevares-Muñiz, *op. cit.*, pág. 156.

 Además, debemos tener presente que este delito, al igual que otros análogos, se creó con el propósito de evitar el fraude y garantizar la pureza del proceso electoral, piedra angular de nuestro sistema democrático de gobierno.(4) Esta es una forma adicional de salvaguardar un derecho de cardinal importancia en la sociedad puertorriqueña como lo es el derecho al sufragio universal. Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1. Si interpretásemos que el delito tipificado en el Art. 8.025(b) de la Ley Electoral, *supra*, es de responsabilidad penal absoluta u objetiva, estaríamos atentando contra esta garantía constitucional.

---

(4) El Art. 1.002 de la Ley Electoral, 16 L.P.R.A. sec. 3002, declara como propósitos de dicha ley los siguientes:

"El Gobierno por el consentimiento de los gobernados constituye el principio rector de toda democracia. *Tiene sus pilares de formación en la aspiración de los ciudadanos a una amplia participación en todos los procesos electorales que les rigen.*

"En base a esta aspiración de pueblo, *la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho al sufragio universal, igual, secreto, directo y libre, a través del cual cada ciudadano puede emitir el voto con arreglo a los dictados de su conciencia.* Tal garantía de expresión electoral dispuesta en nuestra Constitución y también enmarcada como ejemplo en otras democracias occidentales, representa el más eficaz instrumento de participación ciudadana. Por ello, nuestro ordenamiento constitucional extiende, además, a los partidos políticos un reconocimiento expreso y unos derechos categóricos, sujeto a los derechos de los electores al amparo de la sec. 3051 de este título, sobre Derechos y Prerrogativas de los electores.

"Sin embargo, a pesar de dicho reconocimiento, las tendencias electorales modernas exigen la capacidad de expresión con independencia de afiliación partidista para la protección de todos los ciudadanos que así lo desean. Por tal razón, *nos reafirmamos en el principio de que los propósitos de existencia de un ordenamiento electoral descansan en unas garantías de pureza procesal capaces de contar cada voto en la forma y manera en que sea emitido.*

"A fin de asegurar en forma cabal esa pureza tan necesaria al desarrollo de nuestra democracia y paralelamente garantizar la confianza del electorado puertorriqueño en unos procesos electorales libres de fraude y violencia, adoptamos el presente Subtítulo." (Énfasis suplido.)

# III

*El registro y la notificación de la sentencia: su finalidad y efecto*

La supuesta ilegalidad de la actuación del acusado —el intentar votar sin derecho a ello— se fundamentó en una sentencia del Tribunal de Distrito de Adjuntas en Jayuya, mediante la cual se ordenó su exclusión de la lista de electores de ese municipio. Es necesario que analicemos los principios procesales que inciden sobre la determinación de cuándo entró en vigor y, por lo tanto, si se podía hacer efectiva dicha sentencia.

▮▮▮▮▮ Un tribunal dicta una sentencia final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes. *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20, 26 (1986); *Cortés Román v. E.L.A.*, 106 D.P.R. 504, 509 (1977); *Dalmau v. Quiñones*, 78 D.P.R. 551, 556 (1955). La parte dispositiva, o sea, la parte "donde se adjudican y determinan las controversias del caso y donde se definen los derechos de las partes", es la que constituye la sentencia. *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642, 656 (1987). Una vez dictada, es deber del Secretario del tribunal notificarla, a la brevedad posible, archivando en autos una copia de ella, de la constancia de la notificación y registrando la sentencia. Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La notificación se hará al abogado de la parte, a menos que el tribunal ordene que se haga a la parte o que ésta haya comparecido por derecho propio, en cuyo caso se le notificará directamente a ella. "La notificación al abogado o a la parte se hará entregándole copia o remitiéndosela por correo a su última dirección conocida ...." Regla 67.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ahora bien, la entrega de la notificación de la sentencia se considera hecha cuando se pone en manos del abogado o de la parte, según fuese el caso, o dejándola

"en su oficina en poder de su secretaria o de otra persona a cargo de la misma; o, si no hubiere alguien encargado de la oficina dejándola en algún sitio conspicuo de la misma, o si la oficina estuviere cerrada o la persona a ser notificada no tuviere oficina, dejándosela en su domicilio o residencia habitual en poder de alguna persona que no sea menor de 18 años que resida allí. La notificación por correo quedará perfeccionada al ser depositada en el correo". Regla 67.2 de Procedimiento Civil, *supra.*([5])

La imperiosidad de la notificación a los abogados de las partes, cuando éstas comparecen mediante representación legal, estriba en la gran responsabilidad que éstos tienen con relación al trámite del pleito. *In re Siverio Orta*, 117 D.P.R. 14 (1986). Así lo reconocimos al señalar que, únicamente "por excepción expresamente autorizada, y aun así con renuencia, puede aceptarse como suficiente la notificación a una parte ignorando a su abogado". *Berríos v. Comisión de Minería*, 102 D.P.R. 228, 230 (1974). Véanse, además: *Rodríguez Febo v. F.S.E.*, 116 D.P.R. 31 (1984); *Santiago Dávila v. F.S.E.*, 113 D.P.R. 627 (1982); *Arroyo Moret v. F.S.E.*, 113 D.P.R. 379 (1982).

Las reglas específicamente disponen que una "sentencia no surtirá efecto [no será ejecutable] hasta archivarse en autos copia de su notificación ...". Regla 46 de Procedimiento Civil, *supra*. Los términos jurisdiccionales para utilizar los remedios postsentencia y para recurrir en alzada comienzan a transcurrir desde el archivo en autos de una copia de la notificación de la sentencia. La notificación y el archivo en autos de esta copia es una etapa crucial

---

([5]) La Regla 12(c) de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II–A, dispone:

"El Secretario deberá archivar en autos copias de las sentencias, órdenes o resoluciones y de la constancia de la notificación de las mismas a todas las partes afectadas, dentro de un término no mayor de 3 días laborables de haberse enviado dichas sentencias, órdenes o resoluciones a la secretaría."

del proceso. Si no se cumple con este trámite, la sentencia no se puede ejecutar; no surtirá efecto.

Con relación a los procedimientos especiales, las Reglas de Procedimiento Civil serán derecho supletorio en tanto y en cuanto no conflijan con el propósito de la ley especial. Art. 18 del Código Civil de Puerto Rico, *supra*; Bernier y Cuevas Segarra, *op. cit.*, Cap. 69, págs. 441–443. El Art. 1.023 de la Ley Electoral, 16 L.P.R.A. sec. 3031, dispone que "[e]n los casos de recusaciones por domicilio tanto el recusado como el recusador podrán apelar dentro de los diez (10) días la determinación de la Comisión Local al Tribunal de Distrito".[6] Al no disponer la Ley Electoral de un procedimiento específico para la notificación y la ejecución de la sentencia que recaiga, y al no ser las Reglas de Procedimiento Civil sobre esta materia contrarias a los propósitos de dicha ley, la notificación y la ejecución de la sentencia que dicte el Tribunal de Distrito se regirán por éstas.

## IV

*Conclusión*

Tomando en consideración las normas de derecho previamente esbozadas, pasemos a analizar los hechos del caso de autos. De éstos se desprende que la sentencia en el caso de recusación del acusado apelante por razón de su domicilio (dictada por el Tribunal de Distrito) no se notificó ni a éste ni al abogado que lo representó. La notificación se hizo exclusivamente al abogado de la parte promovente de la acción de recusación y a otro abogado que no representó a parte alguna en ese pleito.

Cuando el acusado acudió a votar el día de las eleccio-

---

[6] Este artículo establece que el tribunal tramitará los casos dentro de los términos dispuestos en el Art. 1.016 de la Ley Electoral, 16 L.P.R.A. sec. 3016a.

nes generales, en el Colegio de Votación le indicaron que no podía votar allí porque existía una orden judicial que lo excluía de la lista de electores elegibles. No le mostraron copia de la orden. Luego de decirle a la funcionaria electoral que él desconocía la existencia de tal orden, se comunicó con un representante de su partido y se marchó del lugar. Fue a la Junta de Inscripción y pidió que verificasen su *status* como elector, y ésta le expidió un documento oficial en el que se hizo constar que no existía impedimento legal alguno para que él votara. Con este documento acudió nuevamente al Colegio de Votación y allí, luego de consultar entre sí, unánimemente los funcionarios electorales le permitieron votar, aunque mediante el proceso de recusación.

Bajo esta situación fáctica, surge con meridiana claridad que la sentencia, que eliminaba al acusado apelante de la lista de electores elegibles para el Municipio de Jayuya, no era ejecutable y, por lo tanto, no había surtido efecto alguno al momento en que el acusado apelante intentó votar. En esos momentos, éste aún no había sido válidamente excluido de la lista de electores del Municipio de Jayuya. El que la funcionaria electoral le hubiese informado la supuesta existencia de dicha orden, sin mostrársela siquiera, no podía sustituir la notificación que debió hacer el Secretario del tribunal de acuerdo con el ordenamiento procesal y nuestra jurisprudencia, ni subsanar los efectos de la falta de tal notificación.

Además, de los hechos reseñados no surge que el apelante actuara con la intención de violar la Ley Electoral. Por el contrario, actuó como un ciudadano responsable que, ante los impedimentos levantados por funcionarios electorales para evitar que ejerciera su derecho al voto, acudió con premura a los organismos gubernamentales llamados a establecer con precisión su capacidad como elector.

El Ministerio Público no probó el elemento mental de la

intención ni que al momento de intentar ejercer su derecho al voto el acusado apelante estuviese legalmente impedido de hacerlo.

A la luz de todo lo antes expuesto, *se revoca la sentencia emitida por el Tribunal Superior, Sala de Utuado, el 1ro de junio de 1989 y se absuelve al acusado apelante del delito imputado. Se dictará sentencia en conformidad con esta opinión.*

El Juez Asociado Señor Negrón García emitió una opinión una concurrente.

## – O –

Opinión concurrente del Juez Asociado Señor Negrón García.

### I

Coincidimos con la revocación decretada por el Tribunal. A todos los fines prácticos, el Procurador General se allana al expresar en su comparecencia, en cuanto al primer señalamiento, lo siguiente:

> En el presente caso, la sentencia fue notificada a un abogado distinto al que representó al apelante durante el proceso, ni siquiera a la parte. *La adecuada notificación al apelante le privó de su derecho a solicitar una reconsideración o la revisión de la sentencia. Podemos concluir que se afectaron sus derechos como elector.* En el caso de *Frente Unido Independentista* vs. *Comisión Estatal de Elecciones*, Opinión del 30 de abril de 1990, se dijo que:
> "El proceso electoral en nuestro sistema democrático está revestido de un alto interés público, *Escalona Vicenty* v. *C.E.E.*, 115 D.P.R. 529 (1984). Ello requiere diligencia en la presentación de los reclamos de los electores, de manera que se eviten dilaciones y demoras innecesarias que entorpezcan el proceso electoral y promuevan la incertidumbre de derechos."

*Esta diligencia también se requiere cuando se notifica a una
persona que ha sido excluida como elector. Por lo tanto, el Tri-
bunal de instancia erró al concluir que el apelante [Hernández
Maldonado] había sido notificado de la sentencia en su contra.*
(Énfasis suplido.) Informe del Procurador General, pág. 4.

## II

No existe otra ruta decisoria. Como expusimos en nues-
tro disenso en *Granados v. Rodríguez Estrada V*, 127
D.P.R. 1, 288 (1990), "[e]s principio fundamental del Dere-
cho en *todos sus ámbitos*, incluso la rama del derecho elec-
toral, que los actos nulos no pueden ser utilizados para
conferir o quitar *derechos* ...". (Énfasis suplido.) No basta
la ficción forense. Sean determinaciones de las comisiones
locales electorales —como lo fueron en *Granados v. Rodrí-
guez Estrada V*, supra, o como aquí, dictámenes judicia-
les— es menester una notificación real y adecuada al elec-
tor recusado para que comience a correr el término para
apelar. Sin esa notificación, los trámites son nulos.

Situaciones como las de autos y los de *Granados v. Ro-
dríguez Estrada V*, supra, cuyo resultado es confiscar ile-
galmente el derecho al sufragio electoral, no deberían for-
mar parte de nuestro repertorio jurisprudencial.