# 2009 DTA 134

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

ANTONIO ECHEVARRÍA FLORES
Querellante-Recurrido

v.

CARLOS FONTANEZ OCASIO H/N/C FONTANEZ DRIVING SCHOOL
Querellado-Recurrente

DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS
OFICINA MEDIACIÓN Y ADJUDICACIÓN
Agencia-Recurrida

Núm. KLRA-09-00724

San Juan, Puerto Rico, a 23 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Colom García

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Carlos Fontánez Ocasio, dueño y administrador de Fontánez Driving School (Sr. Fontánez o recurrente) comparece ante nos para solicitarnos la revisión de la Resolución y Orden emitida por la Oficina de Mediación y Adjudicación del Departamento del Trabajo (OMA) el 21 de junio de 2009 y notificada el 30 de junio de 2009 (Ap., págs. 1-43). En dicha Resolución, la OMA ordenó la anotación de rebeldía del Sr. Fontánez y le impuso el pago compensatorio de $23,107.62 en concepto de despido injustificado, vacaciones adeudadas, salarios devengados y no pagados por el patrono querellado, horas extras, período de tomar alimentos e intereses computados desde que se ordenó el pago de la reclamación.

### I

**Hechos**

Los sucesos que forma esta causa arrancaron durante el mes de diciembre de 2007 cuando el Sr. Antonio Echevarría Flores (Sr. Echevarría) radicó querella en la Oficina del Negociado del Trabajo, Oficina de Caguas, Departamento del Trabajo y Recursos Humanos (Negociado del Trabajo). Al amparo de la Ley Núm. 80 del 30 de marzo 1976, conocida como "Ley de Indemnización por Despido Injustificado", 29 L.P.R.A. sec. 185 *et seq.*, el Negociado de Trabajo, por voz de la Investigadora Vilma E. De Jesús Gautier, comenzó las gestiones investigativas de la querella y citó al Sr. Fontánez para el 24 de enero de 2007 (Ap., p. 24). Acatando lo pedido, el Sr. Fontánez y su representación legal asistieron a la cita y cumplieron posteriormente con la entrega de la documentación requerida por el Negociado. **[1]**

Estando pendiente la investigación ante el Negociado desde diciembre de 2007, el 14 de abril de 2008, el Sr. Echeverría radicó la Querella AC-08-312 ante la OMA contra Fontánez Driving School por concepto de

despido injustificado, salarios, vacaciones, horas extras y período de tomar alimentos (Ap., p. 52). **[2]** El 4 de marzo de 2009, la OMA envió a las partes notificación mediante correo certificado de la vista administrativa, pautada para el 9 de abril de 2009 en las oficinas de la OMA. La notificación de la querella incluyó como anejos, copia de la querella y las hojas de cómputos generadas por el Negociado de Normas de Trabajo del Departamento (Ap., págs. 53-55). Según la determinación de la OMA, "la notificación fue adecuada y obra en autos los acuses de recibo remitidos por el Servicio Postal de los Estados Unidos al Foro. Las partes recibieron la notificación de la querella y el señalamiento de la vista administrativa; la parte querellada recibió la notificación el 7 de marzo de 2009 y el querellante, el 10 de marzo de 2009." (Ap., p. 5).

El 1 de abril de 2009, la OMA emitió Resolución Interlocutoria y Orden, en la que se dejó sin efecto la vista pautada para el 9 de abril de 2009 por razón del Departamento declarar receso de semana santa, y se citó a las partes para el 11 de junio de 2009 a las 9:00am (Ap., págs. 59-62).

Un mes y nueve días luego del Sr. Fontánez –propietario de Fontánez Driving School–, haber recibido la querella, el 13 de abril de 2009, la OMA atendió favorablemente la Moción Interesando Resolución y Orden Conforme la Regla 5.6 del Reglamento de la OMA y en la que el Sr. Echevarría le solicitaba a la agencia "que dado que la parte querellada no contestó la querella de epígrafe, se le declare en rebeldía y se emita Resolución y Orden sumaria a favor del querellante." (Ap., págs. 63-65). En dicha Resolución Interlocutoria y Orden, la OMA le advirtió al querellante lo siguiente:

"Conforme surge del acuse de recibo de la referida notificación que remitió el Servicio Postal de los Estados unidos a la O.M.A., la parte querellada recibió la notificación de vista administrativa el 7 de marzo de 2009. El término de diez (10) días para contestar la querella o solicitar la prórroga venció el miércoles, 18 de marzo de 2009. Luego de revisar el expediente oficial de este caso, hemos contestado que al día de hoy la parte querellada no ha contestado la querella ni ha solicitado prórroga alguna.

A tales efectos, disponemos mediante la siguiente:

"ORDEN

Se ORDENA a la parte querellada que muestre causa ante este Honorable Foro en el término veinte (20) días, contados a partir de la notificación de la presente RESOLUCIÓN INTERLOCUTORIA Y ORDEN, por lo cual no procede anotarle la rebeldía y emitir Resolución y Orden sumaria disponiendo del caso conforme lo establece la Regla 5.6 del Reglamento de OMA, *infra*; y/o, no proceda la imposición de sanciones económicas al amparo de la Regla 5.19 del Reglamento de OMA, *infra*, por no haber contestado la querella. En la alternativa, se dictará RESOLUCIÓN Y ORDEN disponiendo de la querella de epígrafe según solicitado por la representación legal de la parte querellante."

(Ap., p. 6)

Finalmente, el 21 de junio de 2009, sin aún el querellante haber contestado la querella, la OMA declaró ha lugar la reclamación presentada y condenó a la recurrente a compensarle $23,107.62 por los conceptos contenidos en la reclamación. **[3]**

Inconforme con tal determinación, el Sr. Fontánez acude ante nos y, en síntesis, señala que la adjudicación del caso en rebeldía atenta contra el debido proceso de ley.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver. **[4]**

Como se sabe, el inciso (c) del Artículo 4.006 de la Ley Núm. 201 del 22 de agosto de 2003, según enmendada, conocida como la Ley de la Judicatura de Puerto Rico, 4 L.P.R.A. § 24, establece que este Tribunal de Apelaciones tendrá competencia para, mediante recurso de revisión, entender en la impugnación de "las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas." A tono con ello, la Sección 4.2 de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2172, en lo concerniente al tipo de dictamen administrativo que será revisable por el foro judicial, dispone que:

"Una parte adversamente afectada por una *orden o resolución final* de una agencia y que haya agotado todos los remedios provistos por la agencia o el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título...".

Establecida nuestra jurisdicción, procedemos a exponer el derecho aplicable a la causa ante nos. La Ley Núm. 384 de 17 de septiembre de 2004, 3 L.P.R.A. sec. 320 *et seq.*, es la ley habilitadora que crea la OMA y le confiere jurisdicción para atender reclamaciones laborales mediante un procedimiento administrativo de adjudicación conforme a lo establecido por la L.P.A.U.

El Artículo 1 de la Ley Núm. 384, *supra,* le otorga a la OMA la facultad de conciliación y adjudicación sobre las querellas recibidas por el Negociado de Normas del Trabajo por despido injustificado en las cuales no se reclame indemnización de daños y perjuicios y otras causales separadas al derecho de mesada. *Id.*

Por otro lado, los Artículos 1.2 y 1.3 del Reglamento Núm. 7019 del 11 de agosto de 2005 del Departamento del Trabajo, mejor conocido como Reglamento de Procedimientos de Mediación y Adjudicación (Reglamento de la OMA), establecen que el Secretario del Trabajo y Recursos Humanos en virtud de las facultades concedidas por la LPAU; la Ley Núm. 384, *supra,* la Ley Núm. 15 de 14 de abril de 1931, 3 L.P.R.A. 304 *et seq.*, y la Ley Núm. 2 del 17 de octubre de 1961, conocida como la Ley de Procedimiento Sumario sobre Reclamaciones Laborales 32 L.P.R.A. sec. 3118, *et seq.*, promulgó el Reglamento de la OMA con el propósito de regular los procedimientos administrativos de mediación, conciliación y adjudicación de las disputas y controversias laborales iniciadas en el Departamento del Trabajo en las materias bajo su jurisdicción.

En lo referente al procedimiento de la notificación de la querella, una vez ésta es presentada, debe ser notificada a las partes conforme lo establece la Regla 5.4, y a tono con el método de notificación requerido por la LPAU, expone:

"La OMA notificará por escrito **a los querellados o a sus representantes autorizados** la querella presentada contra éstos. Además notificará a las partes de la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se efectuará personalmente o por correo certificado...". (Énfasis nuestro).

Por otro lado, el Reglamento establece que todo abogado que asuma representación legal está obligado a notificarlo por escrito a la OMA y a todas las partes de la querella. Regla 5.2 del Reglamento Núm. 7019.

Al amparo de la Regla 5.14 del Reglamento de la OMA, el Juez Administrativo podrá declarar en rebeldía a una parte:

"Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo, el Juez Administrativo o el Oficial Examinador podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte de su

determinación, los fundamentos de la misma y del recurso de reconsideración y revisión dispuestos en las Reglas 6 y 7 de este Reglamento. Regla 5.4 del Reglamento de la OMA."

De otra parte, nuestro ordenamiento jurídico exige que para que nuestros procedimientos administrativos-adversativos sean establecidos de forma cónsona con el debido proceso de ley en su vertiente procesal, tienen que iniciarse a través de una notificación adecuada de la reclamación presentada. *Álvarez v. Arias*, 156 D.P.R. 352, 365 (2002); *Feliciano Figueroa, et. als. v. Toste Piñero*, 134 D.P.R. 909, 914-915 (1993); *Rivera Rodríguez & Co. v. Stowell Taylor, Ect.*, 133 D .P.R. 881, 889 (1993).

Como norma general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. *Pérez v. VPH Motor Corp.*, 152 D.P.R. 475, 484 (2000). Sin embargo, reiteradamente, el Tribunal Supremo ha resuelto que nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo, cuando las mismas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica. *Hosp. Dr. Domínguez v. Ryder*, 161 D.P. R. 341, 346 (2004).

A tenor con lo anterior, la Regla 45.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 45.1, regula lo pertinente a la anotación de rebeldía. Dicha sanción esta reservada para aquellos casos en los cuales el demandado no ha cumplido con el requisito de comparecer a contestar una demanda, no ha presentado sus defensas en otra forma prescrita por ley o cuando una de las partes ha incumplido con algún mandato del tribunal. *Alamo Pérez v. Supermercados Grande, Inc.*, 158 D.P.R. 93, 100 (2002).

Como norma general, el trámite en rebeldía tendrá como consecuencia jurídica que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda. *Alamo Pérez v. Supermercados Grande, Inc.*, *supra*, a la pág. 101; *Continental Ins. Co. v. Isleta Marina*, 106 D.P.R. 809, 815 (1977). Sin embargo, ello no garantiza que la parte demandante habrá de obtener una sentencia favorable, dado que el trámite en rebeldía no priva al tribunal de evaluar si, en virtud de los hechos no controvertidos existe efectivamente una causa de acción que amerite la concesión de un remedio. *Ocasio v. Kelly Servs. Inc.*, 163 D.P.R. 653, 671-672 (2005); *Álamo v. Supermercados Grande, Inc.*, *supra*, a la pág. 102; *Hernández v. Espinosa*, 145 D.P.R. 248, 272 (1998), citando a *Continental Ins. Co. v. Isleta Marina*, *supra*, a la pág. 817.

Por otro lado, como esta causa nos exige que revisemos si el TPI observó el debido proceso de ley al dictar la Resolución recurrida en rebeldía contra el recurrente, procederemos a exponer los siguientes apuntes pertinentes al debido proceso de ley. Este debido trámite es circunstancial y pragmático, *Pueblo v. Suárez Sánchez*, 103 DPR 10, 19 (1974), y no cuenta con un mecanismo inflexible, universal y matemático en su implantación, sino que se nutre de sólidos postulados de trato justo e imparcial antes de llegar a una decisión. Por ello, se ha dicho en *Hannah v. Larche*, 363 US 420, 1514-1515 (1960) (Warren), que:

*"El debido trámite de ley es un concepto elusivo. Su contorno exacto es indefinible y su contenido varía de acuerdo a la situación específica sobre la cual se predica. (Pág. 1514 [7])*

*Por lo tanto, generalizadamente se puede afirmar que el debido trámite de ley aglutina las diferentes reglas de trato justo que por años se ha asociado a los diferentes procedimientos. Para que la Constitución requiera que determinado derecho se ofrezca en un procedimiento en específico, dependerá de una complejidad de factores. La naturaleza del alegado derecho, la naturaleza del procedimiento y como ello recarga el procedimiento, son consideraciones que deben ser tomadas en cuenta. (Pág. 1515 [7])*

Anteriormente, el Juez Frankfurter había señalado, en *Griffin v. Illinois*, 351 US 12, 12-20 (1956), que: *"El debido trámite es, quizás, el concepto menos inmóvil de nuestra ley, el menos atado a la historia y el más absorbente de los poderosos criterios de una sociedad avanzada."* (Traducción nuestra.)

· En materia de revisión judicial de las decisiones o resoluciones administrativas, las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección, y esta presunción de regularidad y corrección será respetada por los tribunales mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 130 (1998), citando a: *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987).

Nuestro Tribunal Supremo ha explicado que el ejercicio de la función revisora de los tribunales apelativos se limita a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un claro abuso de discreción. *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 94 (1997). Los tribunales se abstendrán de avalar la interpretación de la agencia cuando haya actuado en error al aplicar la ley, actúe de forma arbitraria, irrazonable o ilegalmente, o lesione derechos constitucionales fundamentales. *Hernández v. Centro Unido,* 168 D.P.R. 592 (2006); *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374, 396-397 (2001).

### III

En esencia, nos toca dilucidar si la OMA abusó de su discreción al ordenar la anotación de rebeldía y emitir resolución declarando ha lugar la querella presentada contra Fontánez Driving School, imponiéndole el pago de una indemnización por despido injustificado al recurrente-querellado no haber contestado la querella, aun cuando éste compareció junto a su representante legal a la investigación iniciada por el Negociado del Trabajo.

En su escrito de revisión, la parte recurrente nos explica que no se le notificó el señalamiento de la vista administrativa a su representante legal a pesar de que éste "sometió y participó desde un principio en el procedimiento que investigaba la querella radicada ante la agencia recurrida, sometiendo, no sólo su posición, sino documentos a su favor, llevando incluso a su representante legal a la reunión, que se presentara inicialmente ante el Sr. Roberto Castro, Supervisor de Normas y Salarios en la región de Caguas de la recurrida" siendo ésta la razón por la cual no contestó la querella recibida, ni compareció a la vista celebrada (Escrito del recurrente, p. 4).

Si bien el Reglamento de la OMA establece que los abogados están obligados a informar sobre su representación legal en el caso, lo que en efecto la representación legal del Sr. Echevarría hizo el 12 de marzo de 2009, mediante Moción Asumiendo Representación Legal (Ap., p. 56), lo cierto es que para efectos del Departamento del Trabajo, la abogada del Sr. Fontánez ya había comparecido junto a éste en dos ocasiones ante los requerimientos investigativos de la agencia. Diferente hubiera sido si una vez habido comparecido la abogada del recurrente ante el Negociado del Trabajo, el trámite se hubiere cambiado de agencia. Sin embargo, éste no fue el caso, ya que las imputaciones e investigaciones que originaron la querella presentada ante la OMA el 14 de abril de 2008, eran las mismas que el Secretario del Trabajo y sus representantes estaban llevando a cabo desde diciembre de 2007 a través del Negociado de Normas de Trabajo, estando todos estos trámites bajo la sombra de un mismo árbol: el Departamento del Trabajo.

En cuanto a la vulneración al debido proceso de ley del querellante, colocamos nuestro análisis desde el punto de vista de éste, para señalar en primer lugar que reconocemos que la Ley de Procedimiento Sumario sobre Reclamaciones Laborales, *supra*, destaca enfáticamente que el propósito de esta medida es propiciar la pronta vindicación de los derechos del obrero querellado y que desprovisto del carácter sumario, el procedimiento de la Ley 2, resultaría en un procedimiento ordinario más en el cual la adjudicación final que en su día recaiga, resultaría incompatible con el mandato legislativo de diligencia en el dictamen judicial, *Díaz v. Hotel Miramar Corp.*, 103 D.P.R. 314, 316 (1975). Sin embargo, dicha celeridad en los procedimientos no puede convertir en inflexible y férreo la garantía procesal del patrono a recibir una notificación de conformidad con el debido proceso de ley.

El Departamento del Trabajo y Recursos Humanos sostiene que, conforme a su Reglamento, hizo la

notificación adecuadamente, ya que notificó la querella a las·partes. Sin embargo, debido a que en este caso surge claramente que el trámite contra el Sr. Fontánez se inició en el Negociado de Normas de Trabajo, allá para el mes de diciembre de 2007, conforme al Artículo 1 de la Ley Núm. 384, *supra*, la OMA debió haber tomado conocimiento que el recurrente ya había comparecido debidamente representado por su abogado ante esta agencia. De modo que cuando el Negociado instó la querella en la OMA, el trámite continuó y siempre se mantuvo bajo la tenencia y escrutinio del Departamento del Trabajo y Recursos Humanos.

El hecho de que el recurrente compareció representado por su abogado desde el inicio de la investigación ante el Negociado, obliga al Departamento del Trabajo a asegurarse que el abogado sea debidamente notificado, ya que es éste quien tiene la responsabilidad con el cliente. *Arroyo Moret v. F.S.E.*, *supra*, a la pág. 381.

El Departamento del Trabajo aduce que debido a que el trámite llevado a cabo por el Negociado es independiente al que se iba a ventilar ante la OMA, la oficina no podía inferir que el recurrente estaba representado por abogado, o que le representaría la misma abogada que compareció en representación del querellante ante las oficinas del Negociado. El Departamento utiliza tal argumento para obviar notificar del trámite ante la OMA a la abogada del querellado. Rechazamos tal postura. Es totalmente incorrecto aseverar que el proceso de mediación de la OMA nada tiene que ver con el previo procedimiento de investigación que le precede ante el mismo Departamento, para luego concluir que es un proceso totalmente independiente de la adjudicación para propósitos de la notificación. No es concebible que dentro de un mismo Departamento, encargado de ejercer ambas funciones, se desconozca datos sobre la representación legal de una parte que ya ha comparecido. Como cuestión de realidad, de autos consta que el obrero acudió al Departamento con su querella y estando el asunto en trámite –**representado el querellado por abogado**–, el Departamento dejó inconclusa la investigación conducida por la investigadora, Sra. Vilma E. De Jesús Gautier, y se procedió al trámite adjudicativo.

En el campo administrativo, el Tribunal Supremo de Puerto Rico ha resuelto que cuando una parte ha comparecido representada por abogado, la notificación de cualquier escrito debe tramitarse a través de éste, invocando, como norma supletoria, lo dispuesto por la Regla 67.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 67.2, *Santiago Dávila v. F.S.E.*, 113 D.P.R. 627, 631 (1982); *Arroyo Moret v. F.S.E.*, 113 D.P.R. 379, 381 (1982); *Berríos v. Comisión de Minería*, 102 D.P.R. 228, 230 (1974). Nuestro Tribunal Supremo ha expresado que:

"Sólo por excepción expresamente autorizada, aún así con renuencia, puede aceptarse como suficiente la notificación a una parte ignorando a su abogado. Una vez provisto por estatuto el recurso de apelación, tanto en lo administrativo como en la litigación civil, es parte del debido proceso de ley y, por tanto, la notificación al abogado que interviene en representación de persona interesada es indispensable en todas las etapas."

*Arroyo Moret v. F.S.E.*, 113 D.P.R. 379, 381 (1982); *Dávila v. F.S.E.*, 113 D.P.R. 627, 630-631 (1982); *Pueblo v. Hernández Maldonado,* 129 D.P.R. 472, 486-487 (1991).

**La imperiosidad de la notificación a los abogados de las partes, cuando éstas comparecen mediante representación legal, estriba en la gran responsabilidad que éstos tienen con relación al trámite del pleito**. *In re: Silverio Orta,* 117 D.P.R. 14 (1986); *Pueblo v. Hernández Maldonado,* 129 D.P.R. 472, 487 (1991).

El Tribunal Supremo ha advertido que ésta es una exigencia de la garantía al debido procedimiento de ley establecida por el Art. II Sección 7 de la Constitución de Puerto Rico. Dicho foro ha observado que, al no ser perito en derecho, la parte no está en la misma posición que su abogado para levantar aquellos planteamientos que pudieran resultar pertinentes en respuesta a la notificación de un escrito legal. *Berríos v. Comisión de Minería*, 102 D.P.R. a la pág. 230. Además, el litigante común y corriente en nuestro medio, entiende y espera que su abogado atenderá adecuadamente el asunto o el litigio encomendado. Ante el querellado, Sr. Fontánez, el

Departamento es uno sólo y desconoce la diferencia entre éste y su apéndice OMA.

Conforme antes explicamos, las Reglas de Procedimiento Civil se aplican de forma supletoria a los procedimientos administrativos, siempre que la regla en cuestión resulte consistente con la naturaleza de este tipo de procedimiento. *Romero Santiago v. F.S.E.*, 125 D.P.R. 596, 600-601 (1990). En particular, nuestro Tribunal Supremo ha estimado aplicable a este tipo de procedimientos las disposiciones de las Reglas de Procedimiento Civil sobre notificación. *Santiago Dávila v. F.S.E.*, supra, a la página 630; *Berríos v. Comisión de Minería*, supra, a las páginas 229-230.

Además, el lenguaje excluyente de la referida Regla 5.4 del Reglamento de la OMA, *supra*, no debe ser interpretado como para desatender la consideración trascendental de notificar la querella a la representación legal de un querellado. Cuando la regla expone que "la OMA notificará por escrito a los querellados o a sus representantes autorizados la querella presentada...", dentro del mes básico concepto legal, ello sólo se puede entender que se notificará directamente a la parte, cuando ésta no cuenta ya con representación legal que haya comparecido ante previo requerimiento de la agencia, lo que no ocurre aquí.

Para dar debido cumplimiento a los trámites sumarios de la Ley de Procedimiento Sumario sobre Reclamaciones Laborales, deben adoptarse tanto por el Negociado, lo que incluye a OMA, aquellas diligencias necesarias para evitar las situaciones como la que aquí nos aqueja. De lo contrario, la agencia lesiona el debido proceso de ley de un querellado –lego en las materias del derecho administrativo y diligente en comparecer representado con su representación legal–, cuando le obliga concluir que la agencia administrativa, al cambiar la querella de oficina, también borra del expediente administrativo su representación legal, meramente porque el Departamento no pueda inferir que el Querellado continuará con una misma representación legal. Tal razonamiento carece de fundamento válido, porque ninguna agencia o tribunal puede concluir que una parte renunciará a su presentación profesional hasta que ello así ocurría, clara e indubitadamente en récord.

La ley habilitadora de la OMA, Ley Num. 384, *supra*, contempla las etapas de mediación y adjudicación como partes del procedimiento sumario de reclamaciones laborales, pero de dicho texto legal no surge una segregación desvinculatoria entre ambos procesos, como para la OMA ignorar la comparecencia inicial del recurrente vía representación legal ante el Negociado. Por el contrario, la legislación trata ambos trámites como parte de un todo. Ante lo expuesto, es de concluir que la etapa del proceso ante la OMA realmente nunca comenzó, porque de ello no se notificó a la abogada en récord.del Sr. Fontánez. Concluir lo contrario violenta al debido trámite en tanto y en cuanto se notifica de ello directamente a la parte y no a su abogada.

Reconociendo la fuerte política judicial existente en nuestra jurisdicción de que los casos se ventilen en sus méritos, *Banco Popular v. S.L.G. Negrón*, 164 D.P.R. 855; *Ghigliotti v. Administración de Servicios Agrícola*, 149 D.P.R. 902, 915 (1999), y que se cumpla con el debido trámite de ley, debemos revocar la Resolución de OMA del 21, notificada el 30 de junio de 2009, debido a que su trámite estuvo totalmente errado cuando no se notificó del trámite ante OMA a la abogada, entonces en récord, del patrono, Sr. Fontanéz.

Concluimos que la falta de notificación en la que incurrió el Departamento vició totalmente el trámite ante OMA y su posterior dictamen sumario y en "rebeldía".

## IV

Por los fundamentos antes expuestos, revocamos la Resolución aquí recurrida y emitida por la Oficina de Mediación y Adjudicación y devolvemos el caso al Departamento recurrido para que continúe trámite conforme con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

**ESCOLIOS 2009 DTA 134**

**1.** En primera turno, el 17 de enero de 2007, el Negociado le pidió al Sr. Fontánez hacer disponibles en las oficinas de esta agencia el 24 de enero de 2007 los documentos siguientes: carta de posición de la compañía en relación con las alegaciones de despido que hizo el querellante; documentos para sustentar la acción del despido, evidencia del pago de las vacaciones y registro de horas trabajadas y cualquier otra información pertinente al caso (Ap., p.45). Posteriormente, el 24 de enero de 2007, el Negociado le solicitó al Sr. Fontánez suministrar los siguientes documentos: Carta de posición del patrono en relación con las alegaciones de despido que hizo el querellante; copia de los cheques de pago por concepto de vacaciones de los años 2003, 2004, 2005 y 2006; declaraciones escritas de empleados sobre conducta impropia del obrero; y cualquier otra información que entienda pertinente para la investigación del caso (Ap., p.46).

**2.** El Sr. Echevarría Flores reclamó $6,383.94 en concepto de despido injustificado y comprendiendo el período que cubre del 1 de enero de 1997 al 15 de diciembre de 2006; $1,357.00 como penalidad impuesta al amparo de la Ley Núm. 180 de 27 de julio de 1999, 29 L.P.R.A. § 250 *et seq*; y $7,004.84 por concepto de salarios al amparo de la Ley Núm. 17 de abril de 1931, 29 L.P.R.A. § 171. La cuantía total reclamada por el Sr. Echevarría por concepto del despido injustificado, vacaciones, salarios, horas extra, período de tomar alimentos y penalidades ascienden a $23,107.62 (Ap., págs. 2 y 52).

**3.** En lo pertinente, la agencia adjudicó las siguientes determinaciones de hechos:

"1. El querellante, Sr. Antonio Echevarría Flores, presentó el 14 de abril de 2008 una querella contra el patrono querellado, CARLOS FONTANÉZ OCASIO HNC FONTANEZ DRIVING SCHOOL, ante la O.M.A. del Departamento.

2. El querellante, Sr. Antonio Echevarría Flores, fue empleado del patrono querellado, CARLOS FONTÁNEZ OCASIO HNC FONTÁNEZ DRIVING SCHOOL.

3. El querellante laboró para el patrono querellado durante el período comprendido desde el 1ro. de enero de 1997 hasta el 15 de diciembre de 2006.

...

10. El querellante fue despedido de su empleo el 15 de diciembre de 2006.

11. El querellante no recibió indemnización alguna por concepto del despido.

...

26. El Negociado de Normas de Trabajo del Departamento le envió dos (2) cartas de cobro al patrono querellado, requiriéndole el pago de la deuda reclamada ante nos y no efectuó el pago requerido.

27. Las dos (2) cartas de cobro mencionadas fueron remitidas al patrono querellado el 28 de junio de 2007 y el 11 de julio de 2007.

28. El patrono querellado, CARLOS FONTÁNEZ OCASIO HNC FONTANEZ DRIVING SCHOOL, no contestó la querella.

29. La parte querellante solicitó la disposición sumaria de la querella de epígrafe ante el incumplimiento con el ordenamiento legal que rige al Foro y la parte querellada no se opuso ni mostró causa por la cual no se deba resolver sumariamente estas reclamaciones." (Ap., págs. 7-10).

**4.** Atendiendo el contenido de los recursos, se prescinde del alegato del Procurador General de conformidad con la Regla 7B(5) del Reglamento del Tribunal de Apelaciones. 4 L.P.R.A. Ap. XXII-B.